---

Argued 15 January, decided 29 January, 1907.
### STATE *v.* THOMPSON.
88 Pac. 583.

HOMICIDE— ADMISSIBILITY OF DYING DECLARATIONS.

1. Where a statement as to the circumstances of an affray was made by the injured person after being told by his physician that he could not recover unless by a rare chance after a surgical operation, and within a few minutes the person died from the wounds received, the statement is admissible as a dying declaration made under a realization of impending death, although he agreed to submit to the operation.

SELF DEFENSE—EVIDENCE OF DESPERATE CHARACTER OF DECEASED.*

2. On a trial for homicide defended on the ground of self defense, proof that decedent was a violent and dangerous man, is competent,

*NOTE.—The subject of the admissibility of evidence of threats, which, as stated in this opinion, is substantially the same as the admissibility of evidence of violent and dangerous disposition, is extensively considered in notes to *State* v. *Tolla*, 3 L. R. A. (N. S.) 523-527 and *Commonwealth* v. *Tircinski*, 4 A. & E. Ann. Cas. 338-339: 2 L. R. A. (N. S.) 102-104.                REPORTER.

whether the same was known to accused or not, to aid the jury in determining who was the aggressor in the difficulty resulting in the homicide, and the probable nature of the assault made by decedent on accused, if an assault was made; and such evidence should not be limited to the single question, who commenced the affray.

From Gilliam: WILLIAM L. BRADSHAW, Judge.

Joseph Thompson was convicted of murder in the second degree, and appeals.                                   REVERSED.

For appellant there was a brief over the names of *Bowerman & Snover* and *Huntington & Wilson,* with an oral argument by *Mr. Hollis S. Wilson.*

For the State there was a brief over the names of *A. M. Crawford,* Attorney General, and *Frank Menefee,* District Attorney, with an oral argument by *Mr. Menefee.*

MR. CHIEF JUSTICE BEAN delivered the opinion.

1. The defendant was indicted, tried and convicted of murder in the second degree for the killing of one Alex Goericke by stabbing him with a knife, and appeals, assigning as error the admission in evidence of the dying declaration of Goericke, and an instruction that evidence that Goericke was a dangerous and desperate man was admitted only as bearing on the question of who was the aggressor in the affray resulting in his death. The killing is admitted, but defendant claims and offered evidence tending to show that he was assaulted by the deceased, who was a dangerous and quarrelsome man, with a butcher knife, and that he acted in his own lawful self-defense and to save his own life. The difficulty occurred about noon on the 29th of December, 1904. A physician was summoned to attend the deceased, and arrived at the place of the affray sometime between 4 and 5 o'clock in the afternoon. He found the deceased suffering from a wound in the abdomen through which the muscles were protruding and directed that he be taken to Condon, a distance of 10 or 12 miles, for treatment, where he arrived about 11 or 12 o'clock at night, as the surgeon says, in practically a dying condition. After examining his wounds, the surgeon told him that he thought his case hopeless, that his only chance laid in an

operation, and inquired if he was willing to take it, and he replied that he was. He was told by the surgeon that he would probably not come out from under the influence of the anæsthetic, and was asked if he desired to make a statement, to which he replied in the affirmative. His statement was then taken down in writing and signed by him. He died 15 or 20 minutes later while the anæsthetic was being administered. There was no evidence from any declarations of the deceased or otherwise that he had any hope of recovery at the time he made the statement. To all inquiries upon that subject he replied: "I don't know; the doctor may know," or "the doctor can tell you." Under these circumstances we think the dying declaration was properly admitted in evidence: *State* v. *Fletcher,* 24 Or. 295 (33 Pac. 575); *State* v. *Gray,* 43 Or. 446 (74 Pac. 927). The deceased was suffering at the time from a mortal wound from which he died a few minutes later. His physician had advised him that his case was hopeless, and that he would probably die under the anæsthetic which was about to be administered. It was with this knowledge that the statement was made, and it was manifestly under a sense of impending death, and when he had no hope or expectation of recovery. The fact that he was willing to take the only chance held out to him by the surgeon does not indicate that he expected to recover.

2. But the court was in error in limiting the effect of the evidence of the dangerous and desperate character of the deceased to the single question as to who was the assailant or the aggressor in the difficulty which resulted in his death. There was evidence, as the bill of exceptions states, tending to show that the defendant acted in self-defense, and in such case proof that the deceased was a violent and dangerous man is competent, whether known to the defendant or not, for the purpose of aiding the jury in determining who was in fact the aggressor, and the nature and character of the assault, if one was made by the deceased. For, as said by Mr. Wigmore: "One's persuasion will be more or less affected by the character of the deceased; it may throw much light on the probabilities of the deceased's

action": 1 Wigmore, Evidence, § 63.   To prove the dangerous
and desperate character of a deceased, of course, does not tend
to prove the commission of an unlawful act by him, but it does
increase the probability of the other evidence tending to show
that he commenced the affray, and that his attack was felonious
and intended to do the defendant great bodily harm.   The claim
that the defendant acted in self-defense, if indicated by the
other evidence, would be more readily believed concerning a
violent and dangerous man than a peaceable and quiet one, and
any mind searching for the truth and in doubt would naturally
be affected by such evidence.   The defendant's knowledge or
want of knowledge of the deceased's character can have nothing
to do with its value as evidence for the purpose stated.   Its
object was to render more probable the other evidence in the
case which tended to show that the deceased was the aggressor,
and that the nature of his attack was such as to justify the de-
fendant in resorting to violence to repel it or to save his own
life, and is not affected in the slightest by the defendant's
previous knowledge.   Its value comes from the fact that the
deceased was one who was apt or likely to do what is imputed
to him, and not from the defendant's knowledge of such fact.
The rule in reference to the admissibility and use of evidence in
a homicide case tending to show that the deceased was a des-
perate and dangerous man is practically the same as that reg-
ulating the admission of uncommunicated threats made by him,
and in the latter case LORD, J., said:   "Where the circumstances
raise a question of self-defense, evidence of uncommunicated
threats recently made are admissible for the purpose of show-
ing the motive of the deceased, and the nature and character
of the assault": *State* v. *Tarter,* 26 Or. 38 (37 Pac. 53).   Proofs
of threats, or that the deceased was a violent and dangerous
man, are competent in a homicide case to show the probability
of the acts charged against the deceased, whether known to the
defendant or not.   Where the threats have been communicated,
or the desperate and dangerous character of the deceased is
known to the defendant, such evidence may be used, not only

to show the probability of the acts imputed to the deceased, but also the defendant's apprehension of danger when he acted upon appearances not wholly justified by the facts: 1 Wigmore, Evidence, §§ 63, 110. Because the instruction as given limited the application of the evidence in question to the single matter as to who was the assailant, it was erroneous, and the error was not cured by any other instructions.

Judgment reversed, and new trial ordered.          REVERSED.

---

Decided 29 January, 1907.