Argued September 20, affirmed October 17, 1916.

# STATE *v.* FINNIGAN.

(160 Pac. 370.)

**Escheat—Pleading—Issues—Adjudication of County Court.**

1. In an escheat proceeding, where the state claimed personalty of deceased as well as the realty, and answering defendants pleaded an adjudication of the County Court, which, when proved, would utterly defeat the claim of the state as to the personalty and the state replied by denying that the County Court had made the adjudication, proof that the County Court made the order would prevent the personalty from being forfeited to the state, and it was therefore competent to introduce findings and order of the County Court.

**Appeal and Error—Review—Harmless Error—Admission of Evidence —Facts Admitted.**

2. Although the trial court might have considered an oral statement of counsel as a waiver of the state's claim to the personalty, as the state did not in unequivocal terms admit the fact to be that the County Court had ordered a distribution of the personal property

to persons whom that court had found were the heirs of the deceased, and since proof of the fact would establish the claims of the defendant and defeat the claim of the state, the admission of evidence of the order made by the County Court was not prejudicial error.

**Escheat—Pleading—Issues—Adjudication of County Court.**

3. As the state's claim to the personalty made it necessary for the defendants to plead the order of distribution, a binding disclaimer by the state did not of its own force render incompetent the order and findings of the County Court.

**Trial—Evidence—Admissibility for Particular Purpose.**

4. Where the order of the County Court was inadmissible to prove heirship to the realty, but was nevertheless competent to prove ownership of the personalty of deceased, its incompetency for one purpose did not destroy or affect its competency for the other.

**Trial—Instructions—Requests.**

5. Although refusal of an instruction limiting the evidence to the single issue as to personalty would be an error, no error can be predicated upon the court's failure in that respect, in the absence of a request.

**Escheat—Trial—Instructions.**

6. An instruction, that the fact for the jury to determine was whether deceased at the time of his death died without any heir, and that so far as the particular case was concerned before the jury could determine he died leaving heirs they would have to find that some of the parties set up in the answer were his heirs, was not improper as requiring the state to prove that the deceased left no heirs.

[As to presumptions and burden of proof in proceedings to establish escheat, see note in Ann. Cas. 1913E, 383.]

From Washington County: JAMES U. CAMPBELL, Judge.

Department 1.    Statement by MR. JUSTICE HARRIS.

The State of Oregon is attempting to escheat to it the property owned by James McNulty, who died intestate in April, 1907, leaving real and personal property. The County Court appointed William T. Finnigan as administrator. After paying all the claims against the estate, the administrator filed his final account showing real property undisposed of and cash on hand amounting to $1,023.26. Notice was duly given of the time fixed for hearing the final account. Petitions for the distribution of the cash were filed by

different persons who claimed to be heirs of the deceased. The contesting claimants of the estate submitted evidence upon the hearing of the final account and petitions, and then the County Court, on December 27, 1910, made findings of fact and conclusions of law that John McNulty, Kate McNicholas and Mary McAndrews are first cousins of the deceased and his only heirs at law, and ordered the cash to be paid to them.

The escheat proceeding was commenced on January 12, 1911, against the administrator, the Shute Savings Bank, and 24 persons who claim to be heirs of the deceased. Among the averments of the information are allegations that James McNulty left real and personal property, and that he died intestate "without heirs at law or next of kin, and said real and personal property so belonging to said estate should be escheated to the State of Oregon"; that all the defendants, except the administrator and the Shute Savings Bank, have falsely represented themselves as heirs of the deceased and have filed petitions with the County Court asking that the estate be distributed to them; that "it is desired and necessary to have delivered the personal property of said estate of James McNulty, deceased, now in the hands of the administrator, over to the proper persons authorized by law and by this court to take possession of said personal property now in the hands of William T. Finnigan, as administrator"; and that it is for the best interest of the estate that a receiver be appointed to take charge of the personal and real property. The information concludes with a prayer which in part asks that the court adjudge the "real and personal property to be the property of the State of Oregon," and that the administrator be dispossessed "of said real and personal property."

The administrator and the Shute Savings Bank filed separate answers, Mary McAndrews and Kate McNicholas joined in an answer, and Thomas McNulty with nine others filed a joint answer. All the appearing defendants, except the bank, pleaded the order of distribution made by the County Court, for the purpose of defending against the claim which the state makes to the personal property.

The replies traverse the allegations concerning the order of distribution.

During the trial the defendants offered the findings and order of distribution which the County Court had made. Counsel for the state objected to the offer on the ground that the findings and order of the County Court were incompetent, and "also that the state had not made any claim as to the personal property of the decedent. While it is alleged in the information that he has left it, we have no claim as to the personal property, and therefore, as the court had no jurisdiction to settle the real estate, the findings would be of no value, and it is incompetent." The objection was overruled, and the court received the proffered evidence. A jury trial resulted in a verdict for the defendants, and the state appealed from the consequent judgment.                                AFFIRMED.

For appellant there was a brief over the names of *Mr. John M. Wall, Mr. Edmund B. Tongue* and *Mr. Jay H. Upton,* with an oral argument by *Mr. Wall.*

For respondent William T. Finnigan, administrator, there was a brief and an oral argument by *Mr. Dan J. Malarkey.*

For respondents Thomas McNulty, Bridget McNulty, James McNulty, John McNulty, Rose McNulty

Walshe, John McNulty, James McNulty, Patrick Mc-
Nulty, Catherine McNulty and Bridget McNulty Con-
lon, there was a brief over the names of *Mr. E. P.
Stott* and *Mr. Ephraim B. Seabrook,* with an oral
argument by *Mr. Stott.*

For respondents Mary McAndrews, Kate Mc-
Nicholas and Shute Savings Bank, a corporation,
there was a brief over the name of *Messrs. Bagley &
Hare,* with an oral argument by *Mr. William G. Hare.*

MR. JUSTICE HARRIS delivered the opinion of the
court.

1-3. The state is in no position to complain of the
ruling which permitted the defendants to introduce
the findings and order of the County Court. The
state alleged in plain terms in the information that it
was claiming the personal property as well as the
realty; the answering defendants pleaded an adjudica-
tion of the County Court which, when proved, would
utterly defeat the claim of the state to the personal
property; and the state replied by denying that the
County Court had made the adjudication. The plead-
ings raised a clear-cut issue concerning the personal
property. Proof that the County Court made the
order pleaded in the answers would prevent the per-
sonal property from being forfeited to the state (*State
v. O'Day,* 41 Or. 495 (69 Pac. 542) ; *State* v. *McDonald,*
55 Or. 419 (103 Pac. 512, 104 Pac. 967, 106 Pac. 444),
and it was therefore competent to prove the order
which the County Court made. It is true that the
trial court might have considered the oral statement
of counsel as a waiver of the claim to the personal
property which the state had made in its pleading;
but it is also true that the state did not in unequivocal

terms admit the fact to be that the County Court had ordered a distribution of the personal property to persons whom that court had found were the heirs of James McNulty, and, since proof of the fact would establish the claim of the defendants and defeat the claim which the state had solemnly written into its pleadings, it was not prejudicial error for the trial court to permit the defendants to offer evidence of the order which had been made by the County Court: *Bannister* v. *Alderman,* 111 Mass. 261. By claiming the personal property, the plaintiff made it necessary for the defendants to plead the order of distribution; the defendants pleaded what it was necessary for them to plead and what they had a right to plead; and, consequently, they were entitled to prove what they had rightfully pleaded, so that, even if the state did make a binding disclaimer, that act did not of its own force necessarily render incompetent that which undeniably would be competent in the absence of a disclaimer. An oral renunciation of the pleaded claim to the personalty might have avoided the need of evidence to show that the plaintiff had no right to the personal property, but it would not necessarily prevent the court from permitting the introduction of evidence to prove that in truth the state had no rightful claim to the personalty.

4, 5. The County Court had authority to distribute the personal property, but it had no jurisdiction to determine the descent of the real property, and the state therefore argues that it was error to receive evidence of the order distributing the personalty because it also mentioned the real property. Even though it be assumed that the order was inadmissible to prove heirship to the real property, it was nevertheless competent to prove ownership of the personal

property, and its incompetency for one purpose did not destroy or even affect its competency for another purpose. An instruction limiting the evidence to the single issue which made it competent would have been proper; and, of course, when evidence is competent for one purpose but incompetent for another, it is error if the court refuses a request to limit the evidence to the purpose for which it is competent: 3 Ency. of Ev. 188. The plaintiff, however, made no such request, and therefore, in the language of Mr. Justice MOORE, in *Smitson* v. *Southern Pac. Co.*, 37 Or. 74, 89 (60 Pac. 907, 913):

"No error can well be predicated upon the court's failure in that respect, in the absence of a request for such instruction": 3 Ency. of Ev. 190.

Moreover, the state is now complaining, not on account of the mere failure of the court to limit the application of the evidence, but because of the admission of the evidence for any purpose.

6. The appellant next contends that the instructions of the court were too broad and "required the State of Oregon to prove that the deceased left no heirs"; and that the jury should have been required "to find whether the defendants, or some of them, in this proceeding, were the particular heirs of deceased." An examination of the instructions given by the court will disclose that, when considered in their entirety, they are not open to the objection now being urged by the state. Quoting from the charge to the jury:

"So now there is the fact for you to determine: Did James McNulty at the time of his death during the year 1907 die without any heirs? And, so far as this particular case is concerned, before you can determine he died leaving heirs, you would have to find that some of those parties set up in the answer were his heirs."

The remaining assignments of error will not be discussed, for the reason that the state does not argue them in its printed brief.

The judgment is affirmed.                    'AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BURNETT and MR. JUSTICE MCBRIDE concur.

---

[Argued September 19, affirmed October 17, 1916.