Argued July 3, reversed September 16, 1924.

## STATE *v.* GEORGE BROCK AND W. C. BARKER.

(228 Pac. 920.)

**Intoxicating Liquors—Evidence of Presence in Neighborhood Insufficient to Show Possession.**

Evidence that defendants, at different times, had been in vicinity in country where still and liquor, not on their premises, were found, and had been seen going in possible direction towards place, *held* insufficient to show possession of liquor, so as to warrant conviction thereof.

From Josephine: F. M. CALKINS, Judge.

Department 2.

REVERSED.

For appellants there was a brief and oral argument by *Mr. A. C. Hough.*

For respondent there was a brief over the name of *Mr. W. T. Miller,* with an oral argument by *Mr. J. B. Hosford,* Assistant Attorney General.

BURNETT, J.—The charging part of the indictment in this case reads thus:

"The said George Brock and W. C. Barker did on the 27th day of June A. D. 1922, in the said County of Josephine and State of Oregon, then and there being and then and there acting and conspiring together, did then and there unlawfully have and possess intoxicating liquor."

At the close of all the testimony for the state, the defendants moved the court to instruct the jury to return a verdict of not guilty as to each of them for the reason that the state had failed to prove the allegations of the indictment against either of them. This motion was denied and the ruling of the court

is the only error assigned.  The defendants appealed from a subsequent conviction.

A full report of all the testimony is made part of the bill of exceptions.  The only testimony on the subject of possession is that of a detective employed by the county to gather evidence against parties violating the prohibition statutes.  He testifies in substance that on the evening of June 19th he went to the vicinity of the place where the two defendants resided, each in his own house, about 150 yards apart. Early the next morning he concealed himself near the place and at about 8:20 on the morning of the 20th the two defendants took two seamless sacks and disappeared in the woods at a distance of about 30 yards, which is all he saw of them on that day.  He returned to the county seat and afterwards went back to the same vicinity on the afternoon of June 23d. About half-past 10 in the morning of the 24th, the defendant Barker came along a trail carrying a sack over his shoulder.  The next morning the defendant Brock came along the same trail carrying a sack over his shoulder and still the next morning, Brock passed carrying two sacks.  After Brock had gone by and proceeded up the hill out of sight, the witness followed up the trail but he says that at that place there was hardly a trail.  After Brock had returned, the witness went farther on from where Brock had disappeared in the first place and discovered a still and some intoxicating liquor in a keg and glass jars.  He then returned to the county seat, got the sheriff, and on the 28th of June, went to Brock's residence armed with a search-warrant under authority of which the sheriff searched the premises for intoxicating liquor and found none; but they placed Brock under arrest and went on and captured and destroyed the still, most

of the liquor, and all the mash in store.   Afterwards, on the same day, Barker was arrested in Grant's Pass.

The nearest to the still or the intoxicating liquor which the witness places either of the defendants is about three quarters of a mile.   The testimony indicates that the country thereabout is heavily timbered and at least one other trail branches off from the one leading to the place where the still was found. Reduced to its lowest terms, all that is disclosed by the testimony is that the defendants, at different times, had been in the vicinity in the country where the still was discovered.   No act of their's indicating possession or control over the liquor appears in the record.   The liquor and the still were not on their premises.   All that appears is that at intervals they were seen going in a possible direction toward the place where the stuff was found.

The case is governed by such precedents as *State v. Odell,* 8 Or. 30, and others following and approving that case.   The defendants in that instance were indicted for larceny in a store.   One of them testified for the prosecution and gave a detailed statement of the transaction when it became necessary to corroborate him as an accomplice.   All that was offered for that purpose was that the defendant was in the same village where, and at the time, the larceny took place.   The defendant on trial there asked the court to state to the jury that

"The effect of the presence of the defendant Odell in the same town at the time of the commission of the offense or immediately before or afterwards is not sufficient evidence to connect the defendant Odell with the commission of the crime charged in the indictment."

This was refused and this court, in an opinion by Mr. Justice BOISE, reversed the conviction holding that the instruction should have been given, declaring that such evidence would not be sufficient to convict. The Odell case was followed in *State* v. *Townsend,* 19 Or. 213 (23 Pac. 988), *State* v. *Scott,* 28 Or. 331 (42 Pac. 1), and *State* v. *Moss,* 95 Or. 616 (182 Pac. 149, 188 Pac. 702). If within the scope of such decisions evidence that the defendant was in the neighborhood was insufficient to sustain a conviction although coupled with the direct testimony of an accomplice, much more will it be insufficient when standing alone. In the instant case, the witness himself admits being nearer the liquor and the still than ever he saw either of the defendants; yet it does not show him to be guilty of any offense.

As to possession, it was held in *State* v. *Williams,* 102 Or. 305 (202 Pac. 428), following *State* v. *Moss,* that

"It must, however, appear that the possession was personal and that it involved a distinct and conscious assertion of possession by the accused."

These precedents govern the case in hand and lead to a reversal of the judgment. It is so ordered.

REVERSED.

McBRIDE, C. J., and BROWN, J., concur.