Argued December 3, 1946; affirmed January 28; rehearing
denied February 25, 1947

STATE *v.* MOORE ET AL.

(176 P. (2d) 631, 177 P. (2d) 413)

*John P. Hannon,* of Portland (with Edward Sox, of Albany, on brief), for appellant.

*Melvin Goode,* District Attorney, of Albany (H. L. Weinrick, former District Attorney, of Albany, on brief), for respondent.

Before BELT, Chief Justice, and ROSSMAN, BAILEY, LUSK, BRAND and HAY, Justices.

HAY, J.

Jack Mann, S. D. McClain (alias Douglas Day) and Roy Moore were jointly indicted for burglary and larceny alleged to have been committed in a store building at Brownsville, Oregon. The indictment was dismissed as to Mann, and he gave evidence as a witness for the state. McClain, during the trial, withdrew his original plea of not guilty and pleaded guilty. Moore was found guilty by the verdict of the jury. He was adjudged to serve a term in the state penitentiary and appeals from the judgment.

The burglary was committed during the night of December 21, 1945. Mann testified that Moore, McClain and he, in McClain's automobile, traveled from Portland to Brownsville on the evening of that day. En route, they made a brief stop at the home of Mann's parents near Sweet Home, where they picked up some tools. Thence they proceeded to Brownsville, drove through the town, and returned to Sweet Home, where Moore left the car and purchased some sandwiches and coffee at a cafe. Leaving Sweet Home, they stopped at the roadside and consumed the sandwiches and coffee. They then drove back to Brownsville, arriving there at about 11:45 p. m., and parked the car near the store which they proposed to burglarize. They left the car and separated for a short time, Moore and Mann going one way and McClain another. They met afterwards at the store, into which Mann effected an entrance by manipulating the lock of the front door. McClain remained outside, acting as lookout. Moore and Mann entered the store, within which was a safe. Moore, by exploding charges of nitroglycerine, forced open the safe door. He abstracted from the safe certain moneys and United States bonds, and also some tax statements and deeds, and deposited them in a handbag. Taking with them the moneys, the bonds, and the other papers, the men then returned to Portland.

Moore's presence with the other defendants at the residence of Mann's parents near Sweet Home was testified to by Jerry Mann, defendant Jack Mann's younger brother. His purchase of the sandwiches and coffee was testified to by a young lady employee of the cafe, who waited on him. Marion A. Clark, a resident of Brownsville, testified that, near midnight on the night of the crime, he saw Mann in front of the

Brownsville postoffice with another person whom, on the trial, he identified positively as Moore. Moore and McClain were arrested in Portland on the evening of December 23, 1945, in an auto-court cabin occupied by McClain. Near the cabin was a parked automobile, which, as Moore admitted, had been borrowed by him and was under his control. The arresting officers, who had had the cabin under observation, saw McClain carry away a suitcase therefrom. On searching the car, they found therein a suitcase which contained the stolen bonds. When arrested, Moore had $925 in money on his person. Mann was arrested by the sheriff of Linn County on December 22, 1945. He had been driving McClain's car, and, upon searching the car, the sheriff found the tax statements and deeds which had been taken from the store.

The first assignment of error relates to the admission in evidence of a letter written by McClain during the period while he and Moore were incarcerated in the county jail awaiting action by the grand jury. This letter was delivered by McClain to Red Hoskins, a "trusty" in the jail. It reads as follows:

"Red: Row (Roy?) will make bond in 2 or 3 days and if you will sompten for us Roy said he wold get you the Best Lawer money wold get. If you will Talk to Jack Mann. Tell Jack if he will go before the Grand Juary and Tell them that he was full of Goof Ball when he said Roy was with us at Brownsvill. And say that Roy was not with us. That the thrid man name was Bennie—any bodie I dont care hoo, and clear Roy Moore of all blame of the Brownsvill job. That I Doug Day will Ride the Boman Murder Beef alone and clear Jack of any part of it. That I forsed him to do what he did in taking Boman for a Ride. And if Jack wont change

his storie about Roy being with us I'l tell the Hole Truth about Boman ride and Murder. And Let the ax fall where it belongs. Red, don't let Jack see this Kite. Put it down the toilet when you Read it. Then Talk to Jack. Give me a answer at Break, do you need thing, if so let us no. Doug Day.''

■ Moore and McClain conducted their defense jointly. The two defense counsel who appeared at the trial represented both defendants, and so informed the trial judge. McClain, having testified in his own behalf and Moore's and having immediately thereafter changed his plea from guilty to not guilty, was recalled by the state for further cross-examination. Appellant contends that the state thereby made him its witness. Recall of a witness or party for the purpose of laying a foundation to impeach him is proper, and does not have the effect of making him the witness of the party recalling him. 70 C. J., Witnesses, section 1030.

In his direct examination, McClain had admitted the burglary, but said that Moore was not involved therein. He claimed that his accomplices were Mann and a person whom he knew only as ''Bennie''. Bennie, he said, was Mann's partner. McClain had met him for the first time some twelve days before the burglary took place. McClain said further that it was he (McClain), and not Moore, who purchased the sandwiches and coffee at the Sweet Home cafe. On his further cross-examination, McClain admitted that he had written the Hoskins letter. His counsel objected to the introduction of the letter in evidence, insisting that, in the absence of any showing that it was written by Moore's authority or with his acquiescence, it was not binding upon him.

■ The letter, as containing prior statements made

by McClain inconsistent with his testimony at the trial, was competent evidence to impeach him. Section 4-712, O. C. L. A.; 70 C. J., Witnesses, section 1250.

■ Moreover, we think it was further competent, as tending to disclose McClain's corrupt intentions, and hence his untrustworthiness, in relation to the very case on trial. This court has not heretofore dealt specifically with the very point here involved. We have held that, under our statute (section 4-711, O. C. L. A.), the moral character of a witness may not be impeached by evidence that he has been guilty of particular wrongful acts. *Leverich v. Frank,* 6 Or. 212; *State v. White,* 48 Or. 416, 426, 87 P. 137. It has been suggested, however, that impeaching evidence of this sort may be admissible as showing the interest of a witness in the outcome of the litigation. *State v. Rader,* 94 Or. 432, 460, 186 P. 79 (specially concurring opinion by Mr. Justice HARRIS). McClain, having pleaded guilty prior to the time when the impeaching evidence was offered, may be regarded, for the purposes of the discussion, as a witness rather than as a party. His letter contained threats calculated to intimidate Mann into swearing falsely before the grand jury in respect of material facts in the case. We are of the opinion that, by the weight of authority, the letter was admissible in proof of the witness's corrupt intentions relative to "the case in hand". 3 Wigmore, Evidence, 3 ed., section 960 and cases there cited.

■ No doubt, had defendant requested it, the court should have given an appropriate instruction respecting the limited purpose for which the letter was received in evidence. *State v. Farnam,* 82 Or. 211, 252, 161 P. 417, Ann. Cas. 1918A, 318; 53 Am. Jur., Trial, § 670.

Having failed to request such an instruction, however, defendant cannot now complain of the court's failure to give it. *State v. McAvoy*, 57 Or. 1, 3, 109 P. 763; *State v. Wilder*, 98 Or. 130, 134, 193 P. 444; *State v. Keelen*, 106 Or. 331, 336, 211 P. 924; *State v. Jordan*, 146 Or. 504, 548, 26 P. (2d) 558, 30 P. (2d) 751; 53 Am. Jur., Trial, section 780; 23 C. J. S., Criminal Law, section 1325e.

The only other assignment of error is based upon the refusal of the court to give to the jury the following requested instruction:

"The fact of the presence of the defendant, Roy Moore, in the same town at the time of the commission of the offense or immediately before or afterward, is not sufficient evidence to connect the defendant Roy Moore, with the commission of the crime charged in the indictment."

■ This instruction is identical with one requested in *State v. Odell*, 8 Or. 30, refusal to give which was held to be reversible error. The two cases are clearly distinguishable. In the Odell case, the only evidence incriminating the defendant was the testimony of an accomplice, uncorroborated save for evidence of the fact that the defendant was in the town where the crime was committed at about the time of its commission. This court was of the opinion that such evidence was not, by itself, sufficient to satisfy the statutory requirements for corroboration of the testimony of an accomplice. Section 26-939, O. C. L. A.; *State v. Moss*, 95 Or. 616, 625, 182 P. 149, 188 P. 702; *State v. Brock*, 112 Or. 59, 61, 228 P. 920.

■ In the case at bar, however, there was corroborating evidence in addition to that of the mere fact of defendant's presence in the vicinity of the crime. There

was the testimony of Clark, who identified Moore as one whom he had seen *in company with Mann* at Brownsville, within less than an hour before the burglary took place; the testimony of the waitress, who identified Moore as the person who bought sandwiches and coffee at Sweet Home on that night; the testimony of Jerry Mann, who saw Moore, Jack Mann and McClain at Mann's parents' home near Sweet Home on that night, and, on that occasion, was adjured by Moore to forget the incident. Moreover, there was evidence that, at the time of Moore's arrest, the stolen bonds were found in a car which admittedly was under his control. Such evidence, in our opinion, was sufficient to tend to connect Moore with the commission of the crime, and this is all that the statute requires. *State v. Owen,* 119 Or. 15, 37, 244 P. 516. It was not incumbent upon the court, under the evidence in this case, to single out a particular phase of the testimony and give it especial emphasis by such an instruction as that requested. *State v. Newlin,* 92 Or. 589, 596, 182 P. 133.

We find the record to be free from reversible error. The judgment is affirmed.

BRAND, J., did not participate in this opinion.

---

Petition for rehearing denied February 25, 1947

## ON PETITION FOR REHEARING
(177 P. (2d) 413)

Before ROSSMAN*, Chief Justice, and LUSK, BELT, BAILEY and HAY, Justices.

HAY, J.

The defendant Moore, contending that, in several

*Became Chief Justice January 6, 1947.

particulars, the court's opinion herein is manifestly erroneous, has petition for a rehearing.

It is insisted that the court erred in stating that the two defense counsel who appeared at the trial represented both defendants, and that they so informed the trial judge.

The record, however, showed clearly that both counsel represented both defendants. The preamble to the transcript of testimony states, "* * * and the defendants S. D. McClain alias Douglas Day and Roy Moore appearing in person and by their attorneys Edward Sox and John P. Hannon * * *." Mr. Sox reported "ready" for both defendants by name. Mr. Hannon made an opening statement "on behalf of the defense". Mr. Sox, answering a query by the trial judge, informed him that he was associated with Mr. Hannon in representing Moore. He had been appointed by the court to represent McClain, and stated that, even before such appointment, he had represented Moore. There can be no question but that both counsel represented both defendants.

It is asserted that the court erred in holding that McClain was a witness for his codefendant Moore. Counsel say that under the law of Oregon (section 26-925, O. C. L. A.), it was impossible for McClain to be called as a witness by his codefendant. That section of the code provides that, when two or more persons are jointly indicted, and the court is of opinion that, in regard to a particular defendant, there is not sufficient evidence to put him on his defense, it must discharge him if requested by a codefendant then on trial, in order that he may be a witness for such codefendant. The gist of the matter is that a defendant is not a competent witness for his codefendant. McClain, in the present case, offered himself volun-

tarily as a witness. The state might have objected to his competency, but it did not. That he was testifying both for himself and Moore is apparent. He was called as the first defense witness, and his testimony appears in the transcript under the heading "Defendants' Case". He was examined in chief, and immediately cross-examined. At the conclusion of his cross-examination, Mr. Sox, one of his counsel, immediately stated to the court: "If the Court please, we now change our plea to 'guilty'." McClain then stated that he had never intended to deny the facts.

Even apart from the affirmative showing of the record, it is obvious from the tenor of McClain's testimony that the major and no doubt the only purpose of putting him on the stand was as a witness for Moore. His testimony served to fortify Moore's defense of alibi. It sought to eliminate Moore from the burglarious trio and replace him by the mysterious "Benny" (or "any bodie I don't care hoo"). He testified to matters which had no bearing upon his own defense, but only upon Moore's. Indeed, he was making no defense for himself, but, on the contrary, admitted his participation in the crime. For example, he said that the purchase of sandwiches and coffee for the gang was made by him, (thereby contradicting the testimony of the waitress that they were purchased by Moore); that he and Mann, having heard it rumored that Moore kept several thousand dollars in his apartment in Portland, broke into the apartment with the intention of stealing this money, but failed to find it, (apparently, this incident was related for the purpose of inviting the jury to infer that there was no close association between McClain and Moore); that he had been acquainted with Moore, off and on, since 1922; and that, after returning to Portland from Brownsville

with the proceeds of the Brownsville burglary, he telephoned Moore and asked him if he might leave "something hot"—some bonds—with Moore for a few days, but that Moore refused.

On being recalled by the state for further cross-examination, his counsel made no objection whatever, notwithstanding the fact that McClain was "out of the case".

During McClain's further cross-examination, he testified that Moore could neither read nor write, and thereupon voluntarily apologized to Moore for such statement, saying, "I hate to do that, Roy, but for your benefit I have to do it".

We are satisfied that our holding, that McClain testified as a witness for both defendants, was well within the mark. In fact, under all the circumstances, it might be argued plausibly that his testimony was intended for Moore's sole benefit, because, as he had already determined to plead guilty, there was no other imaginable purpose for putting him on the witness-stand at all.

■ Error is claimed in the court's holding that the state was entitled to impeach McClain by putting the Hoskins letter in evidence, for the reason that, when the letter was introduced, McClain, having changed his plea to guilty, was no longer on trial. As he had testified as a witness for Moore, however, he was subject to impeachment as any other witness.

The only purpose in the introduction of the Hoskins letter, it is said, was to prejudice the jury against Moore, and it is argued that putting the letter in evidence violated Moore's constitutional rights to due process, as guaranteed him by the XIV Amendment to the Constitution of the United States. As we have

said, however, the letter was, in our opinion, admissible in evidence to impeach McClain as Moore's witness, and its introduction was the only competent and effective means available to the state to counteract the ingenious trial strategy by which the defendant sought to make use of the testimony of a codefendant who intended immediately after testifying, to withdraw from the fray by changing his plea to guilty.

■ It is suggested that the court erred in not considering testimony which the defense offered in impeachment of the defendant Mann, who had turned state's evidence. The weight of such impeaching testimony, however, was solely a matter for the jury's consideration.

The petition for rehearing is denied.