Argued December 9, 1969, reversed and remanded June 10, 1970

# BROOKS, *Respondent, v.* BERGHOLM, *Appellant.*

470 P2d 154

*Nicholas D. Zafiratos*, Astoria, argued the cause and filed a brief for appellant.

*Ernest Lundeen*, Eugene, argued the cause and filed a brief for respondent.

Before PERRY,* Chief Justice, and McALLISTER,

* Perry, C.J., retired June 1, 1970.

SLOAN, O'CONNELL, GOODWIN,[**] DENECKE, and HOLMAN, Justices.

McALLISTER, J.

This is an action for assault and battery in which the jury awarded plaintiff Brooks $1,000 general damages and $2,000 punitive damages. Defendant Bergholm appeals, and objects to the admission of certain evidence and the failure of the court to give two requested instructions.

Plaintiff's wife had formerly been married to the defendant, and Barbara, a child of that marriage, lived with plaintiff and her mother. The altercation occurred when plaintiff and his wife went to defendant's home to pick up Barbara, who had been visiting her father. An argument developed between Brooks and Bergholm over the former's treatment of Barbara. The evidence is in conflict as to what was said and who struck the first blow. Plaintiff's witnesses testified that Brooks did not hit Bergholm, while defendant's witnesses swore that Bergholm hit Brooks, but only after Brooks had attacked him. Brooks suffered a cracked tooth, facial injuries and bruises of his ribs, back, and private parts where he allegedly was kicked.

The first matter we consider concerns the jury's consideration of evidence of defendant's financial condition. Defendant, called as a witness by plaintiff, testified that he owned two parcels of real estate in addition to his home, that he derived rental income from one of them, that he owned some mining stock, and had an annual income between thirteen and fourteen thousand dollars. Other miscellaneous assets need not be detailed here. We think it a fair characteriza-

---

[**] Goodwin, J., resigned December 19, 1969.

tion to say that the evidence presented a picture of a person of moderate means, practically free of debt, comfortably situated, but by no means wealthy.

Defendant did not object to the introduction of this evidence, and concedes that it was relevant to the question of the amount of punitive damages. He claims, however, that the trial court erred in refusing to give the following requested instruction:

"You are instructed that evidence as to the wealth of the defendant has no bearing on your determination of compensatory damages."

Plaintiff does not contend that consideration of this evidence in determining the amount of compensatory damages would be justified. He does argue that refusing to give the instruction was not error.

■ First, he claims that the instructions on compensatory damages adequately informed the jury of the elements that were to be considered. We do not agree. It is true that the court instructed the jury that it was the aim of the law to "compensate for damage to the extent of the injury" and that plaintiff, if he prevailed, would be entitled to a verdict which would "compensate him for and to the extent of the injury sustained by him." The jury was also told, however, that there was "no fixed or inflexible rule or standard whereby you are to measure damages in a case of this kind," and that the matter was in their judgment and discretion "applied to and upon the evidence in this case." The instructions on punitive damages did not mention the proper use of the evidence in question. Without some indication that the evidence of defendant's finances was introduced for a limited purpose, we think the jury might well have taken it into consideration as a part

of "the evidence in this case" upon which they were instructed to base their award of compensatory damages.

In *State Highway Com'n v. Deal et al*, 191 Or 661, 233 P2d 242 (1951) we held that it was error to refuse to give an instruction telling the jury that certain evidence, admitted for a limited purpose, could not be considered in connection with another issue. The opinion rejected the argument that giving the instruction was a matter for the trial court's discretion:

> "With this argument we find ourselves unable to agree, for the reason that no one during the trial ever suggested—in the presence of the jury at least —that the evidence was offered and received for a particular limited purpose, and, so far as the instructions of the court were concerned, either at the time that the evidence came in or in the charge at the conclusion of the case, the jury were left entirely free to find the market value of Parcel No. 1 by doing the very thing which the rejected instruction would have told them not to do. * * * [W]hen evidence is competent for one purpose but incompetent for another, it is error if the court refuses to limit the evidence to the purpose for which it is competent. State v. Moore, 180 Or. 502, 507, 176 P. 2d 631, 177 P. 2d 413; State v. Farnam, 82 Or. 211, 253, 161 P. 417, Ann. Cas. 1918A 318; State v. Finnigan, 81 Or. 538, 544, 160 P. 370; 53 Am. Jur., Trial, 515 § 670." 191 Or at 675-676.

■ Plaintiff also argues that the instruction as requested was defective in that it referred only to the wealth of defendant, whereas to be fair it should have cautioned the jury not to consider defendant's "wealth or poverty." We think this contention is without substance. One of the common meanings of "wealth" is:

> "Measure or degree to which one possesses things of value or the means of obtaining them;

relative state with respect to purchasing or spending power." Webster's New International Dictionary (2d ed unabridged).

While the requested instruction might have been more happily phrased, we think that in context the word "wealth" could only be understood as used in its neutral sense.

■ The error in refusing this limiting instruction requires that the case be reversed. Because the error related to the amount of damages, we cannot say that it did not affect the jury's verdict. *Baxter v. Baker*, 253 Or 376, 451 P2d 456 (1969); *Martin v. Hahn*, 252 Or 585, 451 P2d 465 (1969); *State Highway Com'n v. Deal et al,* supra, 191 Or at 676.

Although nothing more is necessary to our disposition of the case, we think it advisable to consider defendant's other assignments of error, which involve matters which are likely to arise again if the case is retried.

■ Plaintiff and one of his witnesses were permitted, over defendant's objection, to testify on rebuttal that defendant had a bad reputation in the community for pugnaciousness. Defendant assigns the admission of this testimony as error, contending that his character was not in issue. Because he had admitted hitting the plaintiff, he argues, this testimony was not relevant to any issue in the case and was prejudicial to him. Plaintiff contends that the evidence was admissible because the question of first aggression was an issue. Although we have never decided this precise question, the authorities and the reasoning of our prior cases convince us that the evidence was properly admitted.

In his answer, defendant admitted an altercation between the parties, and alleged as an affirmative defense that plaintiff "provoked and assaulted" defendant and that defendant "necessarily defended himself." Plaintiff denied these allegations. At the trial, the evidence was in direct conflict as to who struck the first blow. The jury thus had to decide who was the aggressor. When this is an issue in an assault and battery case, our decisions have held evidence of the plaintiff's reputation for violent behavior admissible. *Roskop v. Trent*, 250 Or 397, 399, 443 P2d 174 (1968); *Linkhart v. Savely*, 190 Or 484, 494, 227 P2d 187 (1951). See, also, *Rich v. Cooper*, 234 Or 300, 305, 380 P2d 613 (1963); *Sims v. Sowle*, 238 Or 329, 338, 395 P2d 133 (1964) (concurring opinion). If plaintiff's reputation for pugnaciousness is a proper factor for the jury's consideration, then defendant's reputation is equally valid as evidence on this issue. It is not that the character of either party is "in issue." This type of evidence is simply one thing for the jury to consider in deciding where the truth of the matter lies when each party claims that the other was the aggressor. Our conclusion that evidence of the reputation of both parties is admissible finds support in *Brown v. Simpson*, 293 Ky 755, 170 SW2d 345 (1943) and in the evidence texts. 1 Jones on Evidence § 173 (5th ed 1958); McCormick, Evidence § 159.

Defendant cites two cases from other jurisdictions in which evidence of plaintiff's reputation for violence was admitted, but evidence of defendant's reputation was excluded. *Russ v. Good*, 90 Vt 236, 97 A 987 (1916); *Sipple v. Kehr*, 176 Ky 698, 197 SW 391 (1917). These cases are not in point. In each instance the issue under consideration was not first aggression, but

whether defendant was justified in defending himself
and the amount of force he could properly employ.

■ Defendant also assigns as error the trial
court's failure to give the following requested instruc-
tion:

> "There is evidence of prior threats made by the
> Plaintiff against the Defendant. You are instructed
> that you may consider these threats in deciding
> who was the aggressor."

Three witnesses, including defendant, testified that
Brooks had threatened to kill Bergholm. Brooks de-
nied that he had ever made such threats. The early
case of *State v. Thompson*, 49 Or 46, 88 P 583 (1907)
holds that evidence of prior threats is admissible on
the question of who was the first aggressor. And in
*State v. Rader*, 94 Or 432, 186 P 79 (1919) it was held
error to refuse to give the following instruction:

> "If you find from the evidence that E. E. McCue,
> previous to the time he was shot, had made threats
> to kill the defendant or do him bodily harm, you
> have the right to take this into consideration, who
> was the aggressor." 94 Or at 443.

Although *Thompson* and *Rader* were both homicide
cases, we think the underlying reasoning is equally ap-
plicable to an assault case where a similar issue of
first aggression is involved. Defendant was entitled
to an instruction as to the purposes for which the evi-
dence could be considered, if properly requested. We
think, however, that the instruction in the form in
which it was requested was not free from fault. As
pointed out above, plaintiff had denied making the
threats. Defendant's requested instruction assumed
that they were made; it would have told the jury that
they could "consider these threats." An instruction

which assumes the existence of a controverted fact is not free from fault, and refusal to give it would not be error. *Kilkenny, Administrator v. Beebe,* 184 Or 516, 524, 199 P2d 916 (1948); *Sorenson v. Kribs,* 82 Or 130, 145, 161 P 405 (1916). Thus we think that it was not error for the court to refuse to give the instruction as requested, but because the case may be retried, we think it appropriate to point out that if defendant requests a proper instruction on the use of this evidence, it should be given.

Reversed and remanded.

HOLMAN, J., concurring.

The opinion of the majority holds that it would be error upon retrial for the trial judge to fail to give a requested instruction to the effect that evidence of previous threats made by a party to a physical altercation may be taken into consideration by the jury in determining whether the person making the threats was the aggressor. I believe it would be obvious to a juror of ordinary intelligence that a person who threatens another is apt to attempt to carry out the threat and is thus likely to be an aggressor. I, therefore, do not believe the failure to give such an instruction would be error.

Evidence is admitted because it is relevant to the issues in some particular manner. If it is the trial judge's duty, upon request, to point out the relevance which caused each bit of evidence to be admitted, regardless of its obvious purpose, instructions are quickly going to become more voluminous. Each side will request an instruction telling the jury the purpose for which each bit of favorable evidence may be considered. If there were evidence that a party in an automobile accident was operating his vehicle with one

arm around his lady friend, the jury, upon request, would have to be told that this particular bit of evidence may be considered in deciding whether the party had proper control of his vehicle.

In most situations, the relevance of the evidence is so obvious that an instruction should not be given. In other situations, the reason for the admission of the evidence may be obscure and the evidence is likely to be considered for an irrelevant purpose. It would be error in such case to refuse an instruction. The issue upon which this case was properly reversed is an example of a situation in which it is error to fail to point out the relevance of the evidence. The wealth of the defendant was legally relevant to one kind of damage and not to the other. The average juror would not be able to make such a distinction without instruction. There is a third, marginal situation in which the trial judge must have some leeway or discretion and where it is not error to give or to fail to give the instruction.

It is my opinion that the relevance of the evidence is sufficiently obvious so that the request would do no more than to invoke the court's discretion.

DENECKE, J., joins in this concurring opinion.