Argued and submitted August 2, 1982, resubmitted in banc February 9, reversed and remanded for new trial February 16, reconsideration denied April 8, petition for review allowed May 3, 1983 (294 Or 792)
See 295 Or 485, 668 P2d 371 (1983)

# STATE OF OREGON,
*Respondent,*

*v.*

# RAYMOND EDWARD MIDDLETON,
*Appellant.*

(75-06-1924; CA A23510)

658 P2d 555

Ernest E. Estes, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

WARDEN, J.

Richardson, J., dissenting.

## WARDEN, J.

Defendant appeals his conviction for felony murder committed during a robbery. We reverse.

The state called defendant's accomplice, Shaw, as its witness. On cross-examination, defendant impeached Shaw by offering evidence of prior inconsistent statements and evidence tending to show that the witness changed his story after entering into a plea agreement (which was referred to in the examination as a "deal").[1] On redirect examination, the state elicited rehabilitation testimony from the witness that, as conditions of the plea agreement, he was required to testify (presumably against defendant), to give the police information about the location of property stolen during the robbery and "to take a polygraph and pass it."

Defendant's first assignment is that the court erred by permitting the witness to testify that he had been required to take and pass the polygraph test and by denying defendant's motion for mistrial after the testimony was given. Defendant states:

"* * * Although the stated purpose of this testimony was to rebut inferences that his testimony was inaccurate or untruthful, the actual use of the testimony was to unfairly infer to the jury that since the test was a part of the plea agreement, he had taken and passed the examination and because he had done this, his trial testimony was above reproach."

The state argues:

"The defense having painted Shaw as, in effect, a paid liar, the state was entitled to reestablish his credibility by explaining all the factors—including the polygraph condition—contributing to his state of mind. By pointing to the polygraph as another element of the 'deal,' the state furnished a convincing explanation for the contrast between the two sets of statements, and thereby rebutted defendant's claim of fabrication.

"As noted, this is a clear case of the defense 'opening the door' to otherwise inadmissible evidence. * * *

---

[1] Evidence of the plea agreement was first brought out during the state's direct examination of the witness. Earlier, defense counsel had referred to the agreement in his opening statement.

"There is nothing so special about polygraph evidence that makes it exempt from this ['opening the door'] rule. In fact, it is no worse than other forms of ordinarily inadmissible evidence which become admissible for purposes of witness rehabilitation, *e.g.,* evidence of other crimes, etc. * * *"

Both parties rely on *State v. Green,* 271 Or 153, 531 P2d 245 (1975), where the court held that it was impermissible for the prosecution, as part of its showing that a confession was voluntary, to use evidence that the defendant had taken a polygraph test before confessing or evidence of the results of that test. After noting that polygraph evidence is not admissible as substantive evidence in criminal cases, because its reliability has not achieved general scientific acceptance, the court stated:

"[E]vidence of the results of polygraph tests is not admissible as substantive evidence to prove that a person has lied or told the truth. Nevertheless, the jury is likely to infer from evidence of the fact that a criminal defendant was the subject of a polygraph test before making a confession that he lied in response to questions asked during a polygraph test and that he confessed because he was caught lying by the polygraph. As a result, there is danger that such evidence may unduly prejudice the jury in its consideration of the credibility of such a defendant.

"The same is also true, in our opinion, and for the same reasons, of evidence of the results of a polygraph examination and evidence relating to the details of a polygraph examination, from which the jury is even more likely to draw the same inferences.

"For these reasons, it is our opinion that the danger of prejudice from the impact of such evidence upon the question of the credibility of a defendant is so great as to ordinarily outweigh the probative value of such evidence as one or more of the circumstances which the state may properly offer in evidence in laying the initial foundation for the admission of a confession during the trial of a criminal case." 271 Or at 168-69. (Footnote omitted.)

The question raised by defendant's first assignment is the permissible scope of rehabilitation of a witness. Defendant makes no issue of the witness' testimony concerning giving the police information about the location of the stolen property; it is only the polygraph evidence that is

at issue. More specifically, it is the "passing" of the polygraph examination that is the bone of contention, because "passing" implies truthfulness and therefore bolsters the credibility of the witness. That evidence also does one other, more subtle, thing: it permits the prosecutor to vouch for the witness *sub silentio* by impliedly saying to the jury, "I have confidence in putting this man on the stand because I have gained independent verification that his story is true." Next to being allowed to personally take the stand and swear that his witness is truthful, a prosecutor could hardly ask for more.

This is being done under the rubric of rehabilitation after impeachment for bias or interest. The process of impeachment and rehabilitation is governed by OEC 609-1, which provides:

"(1) The credibility of a witness may be attacked by evidence that the witness engaged in conduct or made statements showing bias or interest. However, before this can be done, the statements must be related to the witness and the conduct described, with the circumstances of times, places and persons present, and the witness shall be asked whether the witness made the statments or engaged in such conduct, and, if so, allowed to explain. If the statements are in writing, they shall be shown to the witness.

"(2) If a witness fully admits the facts claimed to show the bias or interest of the witness, additional evidence of that bias or interest shall not be admitted. If the witness denies or does not fully admit the facts claimed to show bias or interest, the party attacking the credibility of the witness may then offer evidence to prove those facts.

"(3) Evidence to support or rehabilitate a witness whose credibility has been attacked by evidence of bias or interest shall be limited to evidence showing a lack of bias or interest."

The crucial phrase in the rule is in subsection (3): limiting evidence to rehabilitate a witness to evidence "showing a lack of bias or interest." The evidence proffered by the prosecutor in this case does not show any "lack" of interest or bias: the witness' interest is manifest. Rather, the proffered evidence is designed to show that, in spite of the interest he admittedly has, this witness is nonetheless telling the truth. The rule excludes such evidence.

Assuming *arguendo* that it did tend to show a lack of bias or interest, rehabilitation evidence of this specific kind, *i.e.*, polygraph evidence, would still be inadmissible. Evidence of the results of polygraph tests has been rejected in Oregon, because "the polygraph has not yet attained general scientific acceptance as a reliable and accurate means of ascertaining truth or deception * * *." *State v. Green,* 271 Or 153, 165-66, 531 P2d 245 (1975). The state has emphasized this lack of scientific acceptance of the reliability of polygraph tests in successfully convincing us that due process does not require the state to grant an inmate's request for a polygraph test to be used as evidence in a prison disciplinary proceeding. *Sandlin v. OWCC,* 28 Or App 519, 522, 559 P2d 1308 (1977). In *Green,* the Supreme Court held that evidence that the defendant was the subject of a polygraph test before confessing was inadmissible. Applying reasoning parallel to that used by the court in the excerpt from *Green* quoted above to the facts of this case: A jury is apt to infer from evidence of the fact that a witness was required to take and pass a polygraph test before testifying that he truthfully answered questions asked during the polygraph test and that his testimony before the jury was truthful, because it conformed to what he said during the test. The danger of prejudice from such evidence, on the question of the credibility of a witness is so great as to outweigh its probative value to rehabilitate a witness. Its admission requires reversal.

Defendant's second assignment is that the court erred in instructing the jury regarding expert testimony. The court instructed that expert opinion should be disregarded if "*any* of the facts relied upon or assumed by the witness in forming his opinion were not established by the evidence or were untrue." (Emphasis supplied.) Defendant's exception to the instruction did not point out that its defect was in its failure to limit consideration to "material" facts.[2] We anticipate that the problem will be obviated in a new trial.

---

[2] The exception defendant took to the instruction, was:

"The exceptions I would take — you gave an instruction regarding the expert opinions, and you indicated that if they found any facts that the person was not aware of to disregard the opinion. I feel the instruction should have

Reversed and remanded for new trial.

**RICHARDSON, J.,** dissenting.

The majority bases its holding on two conclusions: first, that the requirement of the plea agreement that the witness take and pass a polygraph examination could not be introduced to bolster the witness' credibility because polygraphs are themselves unreliable; and second, that the evidence was beyond the scope of rehabilitation allowed by OEC 609-1 because it did not tend to show "a lack of bias or interest."

My fundamental disagreement with the majority is that I do not think the evidence was introduced to bolster the credibility of the witness, although it might have had that incidental effect. In my view, the evidence was adduced and was properly admitted to rebut the plain implication of defendant's cross-examination that the plea agreement constituted a contract between the witness and the state for the former to give perjured testimony. Stated differently, the evidence of the polygraph condition was not advanced to show that the testimony was true; its purpose was to show that the witness had not agreed to lie, and that the state had not resorted to such an agreement to make a case against defendant.

Given that purpose, it is beside the point whether the polygraph is scientifically reliable; the question is whether the jury could reasonably infer that the polygraph requirement caused the witness to *think* that the state wanted him to tell the truth and that it was at least possible the state would know if he did not. The witness' state of mind in agreeing to the polygraph condition, and not the ultimate merits of the polygraph as a truth-finding mechanism, was the relevant point of the evidence.

For that reason, this case differs from *State v. Green,* 271 Or 153, 531 P2d 245 (1975), where the *only reasonable* inference to be drawn from evidence of the fact

been to the effect that if they found some facts not present, that they should consider the effect of those misunderstood facts on the opinion."

The exception does not state that the defect in the instruction was its failure to make the incorrectness of "material facts" rather than "any facts" the criterion for discounting the expert testimony.

or results of the polygraph test was that the defendant had failed it. Even in *Green,* however, the court emphasized that the fact of the test and its results could be admissible if relevant to rebut certain defense evidence. *See* 271 Or at 171-72. *Green* and its progeny therefore lend no support to the proposition the majority extrapolates from them — that *any* evidence in which the word "polygraph" appears is tainted by the unreliability of polygraph testing as a procedure, even when the evidence is probative of something wholly independent of the investigatory objective of that procedure.

There is a somewhat similar flaw in the majority's conclusion that the evidence was inadmissible as rehabilitation under OEC 609-1 because it did not tend to show "a lack of bias or interest" of the witness. The majority states: "The evidence proffered by the prosecutor in this case does not show any 'lack' of interest or bias: the witness' interest is manifest." As best I understand, the majority's reasoning is that the witness was *ipso facto* "interested" because giving testimony was presumably in his penal (or, more correctly, anti-penal) interest, and neither the evidence in question nor any other evidence could show that he lacked *that* interest. Assuming but by no means agreeing that even that interest of the witness can be conclusively presumed, I do not think that is the nature of the interest concerning us. The question is not whether the plea agreement gave the witness an interest in testifying, but whether it gave him an interest in lying. I reiterate that defendant's cross-examination was to the overt effect that the plea agreement was a contract for fabrication. There is no question that the evidence adduced through that cross-examination was permissible as impeachment under OEC 609-1(2). It seems self-evident to me — *at least* absent any reason the majority or defendant provides for believing otherwise — that an inference which can permissibly be supported by impeachment evidence under OEC 609-1(2) can be controverted by evidence under OEC 609-1(3). I do not agree that the legislature intended or said in OEC 609-1 that one party may introduce proof of a fact which the other party may not introduce evidence to disprove.

The majority seems to regard the evidence as a subterfuge for prosecutorial "vouching" for the state's own

witness. It is certainly true that the jury might regard the evidence as bearing on the credibility of the witness. However, that was not the purpose for which the evidence was adduced, and there is nothing in this situation which seems to me to differ from others where evidence admissible for one purpose might be considered for another which would not independently support its admission. Defendant does not contend that he sought a limiting instruction.

I am not as concerned as the majority apparently is that the admission of the evidence here would result in widescale use of plea agreements as a device for bootstrapping otherwise inadmissible evidence bearing on credibility into the record. The admission of this evidence would not mean that all conditions of all plea agreements could be used as evidence, or even that polygraph requirements of plea agreements could be so used where their only probative tendency is to substantiate testimony. For the reasons I have noted, the evidence here rebutted an inference the state was entitled to controvert. I do not see why the admission of this evidence will necessarily result in widespread and inappropriate use of polygraph evidence or evidence of other plea bargain conditions aimed at corroborating testimony. The courts have been responsible since antiquity for determining whether evidence is relevant and admissible in the context of particular cases. There is nothing about the nature of this evidence which warrants a *general* exclusionary rule, and I think the admission of the evidence in the context of *this case* was not error.

I respectfully dissent.

Van Hoomissen and Rossman, JJ, join in this dissent.