Argued and submitted February 8, reversed and remanded May 11, reconsideration denied July 22, petition for review allowed; remanded to Court of Appeals for reconsideration November 29, 1983 (296 Or 120)

# STATE OF OREGON,
*Respondent,*

*v.*

# RICHARD CORGAIN,
*Appellant.*

## (81-329C; CA A24377)
663 P2d 773

J. Marvin Kuhn, Chief Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Robert E. Barton, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

RICHARDSON, P. J.

Van Hoomissen, J., dissenting.

## RICHARDSON, P. J.

Defendant appeals his convictions for aggravated murder, felony murder, intentional murder, first degree robbery and first degree kidnapping. We reverse and remand for a new trial.

Defendant's first assignment of error relates to the testimony of a witness for the state, Darrell Cooper, one of three accomplices. He had entered into a plea agreement and was the only accomplice to testify. Defendant impeached Cooper during cross-examination by eliciting testimony that he had agreed to testify in return for permission to enter his plea in juvenile court. The state rehabilitated Cooper by calling his attorney to testify regarding the agreement and to read the plea agreement into evidence. Conditions of the agreement included that Cooper would honestly disclose to the police and the district attorney all information regarding his accomplices' criminal activities and that, if he were not truthful in court, any statements he had made could be used against him. Otherwise he would be granted immunity for any crimes he disclosed, other than the murder.[1] A portion of the agreement

---

[1] The full text of the agreement as read into evidence is as follows:

"In the Circuit Court of the State of Oregon for the County of Klamath, Juvenile Department, by and through the District Attorney for Klamath County and the child, Darrell Cooper, in person and by and through his attorney, James J. Spindor, hereby agree and enter into the following stipulation.

"Number 1, the child knowingly, freely and voluntarily agrees to stipulate to the jurisdiction in the above-mentioned Juvenile Court to a petition alleging that he committed the offense of Murder, specifically Felony Murder, with regard to the death of Laurence Dean Montgomery which occurred on or about August 29, 1981.

"Number 2, the State, the Department and the child agree that the child's disposition upon having stipulated to jurisdiction as set forth herein above shall be to McLaren School for Boys for a period of time to be set by the Court. The release of the child from McLaren School for Boys shall be determined by that institution but in accordance with law shall not be after the child's twenty-first birthday.

"Number 3, the State and the Department agree not to file a remand petition with regard to this child concerning the death of Laurence Dean Montgomery it being agreed that all proceedings with regard to this child and the death of Laurence Dean Montgomery shall be in Juvenile court.

"Number 4, stipulations 1, 2, 3 of this agreement are subject to the child's meeting with investigating officers and the District Attorney and that he be completely honest in disclosing all information known by him relative to any criminal activity by James Riggs, Timothy Finley and Richard Corgain, including

requiring Cooper to take a polygraph examination to prove he was truthful was not read into evidence.

Defendant argues that such rehabilitation is impermissible under OEC 609-1(3), which provides:

"Evidence to support or rehabilitate a witness whose credibility has been attacked by evidence of bias or interest shall be limited to evidence showing a lack of bias or interest."

In our recent decision in *State v. Middleton,* 61 Or App 680, 658 P2d 555, *rev allowed* 294 Or 792 (1983), the defendant's accomplice testified for the state. He was impeached by evidence of prior inconsistent statements and evidence tending to show he changed his story after entering into a plea agreement. The state rehabilitated the witness by eliciting testimony that the conditions of the agreement were that he testify and "pass" a polygraph examination. We held that the agreement was inadmissible to rehabilitate the witness. Relying on OEC 609-1(3), we stated:

---

but not limited to the death of Laurence Dean Montgomery. The child shall testify at any trials of James Riggs, Timothy Finley or Richard Corgain where the child may have knowledge relating to the charge, said trials include but are not limited to trials relating to the death of Laurence Dean Montgomery. The child shall be given immunity for any crimes which he admits to during the course of said discussion with the District Attorney and/or while testifying on behalf of the State with the exception of the murder of Laurence Dean Montgomery for which he shall stipulate to jurisdiction in Juvenile Court as set forth above.

"Number 5, the State and the Department agree to dismiss the pending petition against the child in Klamath County Juvenile Court for Unauthorized Use of a Motor Vehicle, this being Petition No. 306-81.

"The next number reads: 'The child shall not stipulate to jurisdiction as set forth in paragraph one hereinabove until the completion of the trials of James Riggs, Timothy Finley and Richard Corgain; however, the stipulation shall be entered in the court and the child shall be placed at McLaren School for Boys prior to his eighteenth birthday or stipulation number 2 hereinabove shall be waived by the State and the Department.'

"The last number: 'In the event that this agreement is not completed due to the child's failure to be truthful to the police or the District Attorney, then the State shall not use any of the statements made by the child to the police or District Attorney either in the State's case-in-chief or for purposes of rebuttal testimony in any proceedings brought against the child in adult court and/or juvenile court. In the event the child shall not be truthful in his testimony in court, then the statements made by the child to the police or the District Attorney or the testimony given at any hearing or trial, may be used against the child for any purpose whatsoever.' "

"* * * The evidence proffered by the prosecutor in this case does not show any 'lack' of interest or bias: the witness' interest is manifest. Rather, the proffered evidence is designed to show that, in spite of the interest he admittedly has, this witness is nonetheless telling the truth. The rule excludes such evidence." 61 Or App at 684.

We also concluded that the rehabilitation evidence was inadmissible, because it impermissibly included evidence of a polygraph examination. Although in this case there was no mention of a polygraph examination as a condition of the agreement, the first part of the quoted rationale in *Middleton* applies. A condition of the plea agreement was that Cooper tell the truth. Such evidence does not show "a lack of bias or interest" under the rule, but rather it is designed to show truthfulness *despite* interest. It was error to permit rehabilitation by evidence of the plea agreement's condition that the witness tell the truth. The error was not harmless. The veracity of Cooper's testimony was a key element of the state's case.

Defendant also assigns as error admission of the testimony of a psychiatrist who had examined him at his attorney's request. Defendant asserts that it was admitted in violation of the attorney-client privilege. Defendant's former mother-in-law testified that defendant had an alcohol problem and related an incident of apparent alcohol-induced amnesia within a few weeks of the crimes. Defendant also called an acquaintance who testified that he believed defendant to be an alcoholic. In rebuttal, the state called Dr. Koutsky, a psychiatrist who had examined defendant at defense counsel's request. He testified to defendant's alcohol dependency and his claim of alcohol-induced amnesia, stating his conclusion that defendant nevertheless could have acted with a conscious objective to commit the acts at the time in question.

It is not disputed that defendant's communications to Dr. Koutsky would be protected by the attorney-client privilege absent a waiver of the privilege.[2] The question is whether defendant waived the privilege under OEC 511:

---

[2] Under OEC 503(1)(e) and (2)(a), the attorney-client privilege applies to communications between the client and a "representative of the lawyer," defined as:

"* * * one employed to assist the lawyer in the rendition of professional legal services, but does not include a physician making a physical or mental examination under ORCP 44." OEC 503(1)(e).

"A person upon whom ORS 40.225 to 40.295 confer a privilege against disclosure of the confidential matter or communication waives the privilege if the person or the person's predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication. This section does not apply if the disclosure is itself a privileged communication. Voluntary disclosure does not occur with the mere commencement of litigation or, in the case of a deposition taken for the purpose of perpetuating testimony, until the offering of the deposition as evidence. *Voluntary disclosure does occur, as to psychotherapists in the case of a mental or emotional condition and physicians in the case of a physical condition upon the holder's offering of any person as a witness who testifies as to the condition.*" (Emphasis supplied.)

The official legislative commentary elaborates in part:

"* * * A person, merely by disclosing a subject which the person has discussed with an attorney or spouse or doctor, does not waive the applicable privilege; the person must disclose part of the communication itself in order to effect a waiver. * * *

"The one exception to the foregoing principle is contained in the final sentence of the rule. Where the holder of a privilege offers any person as a witness who testifies on the subject of the holder's physical, mental or emotional condition, *all* privileges that might protect communications on that subject between the holder and a physician or psychotherapist, as the case may be, are waived. * * * Another example would be a criminal case in which defense counsel considers the use of a mental defense or partial defense. The defendant, at the request of the attorney, may see a number of psychiatrists before finding one who will testify that the defendant was suffering from a mental disease or defect at the time of the crime. If the latter testifies at trial that the defendant was not responsible, under ORE 504 there is no psychotherapist-patient privilege as to any psychotherapist because the mental condition of the defendant is in issue. The non-testifying psychiatrists are still protected by the attorney-client privilege, however, as they are 'representatives of the lawyer' under ORE 503. The last sentence of ORE 511 would waive this (and any other) privilege to the extent of permitting the state to inquire of all medical personnel whom the defendant has seen regarding their findings." Kirkpatrick, Oregon Evidence 193 (1982). (Emphasis in original.)

We conclude that by calling witnesses to testify regarding his problems with alcohol and its effect on him, defendant offered witnesses who "testifie[d] as to the condition" within the meaning of OEC 511. Defendant contends that the testimony he offered was not testimony as to his "mental or emotional condition" and that therefore he did not make "voluntary disclosure" under the rule. The point of defendant's argument is not entirely clear. Defendant's alcoholism constitutes a "condition," and whether or not alcohol dependency is classified as "mental or emotional," alcohol-induced amnesia may be considered "mental." In essence, he put his alcohol amnesia in issue as a partial defense. Thus we do not accept defendant's argument that "voluntary disclosure" did not occur.

■ Defendant next argues that, even if disclosure did occur, the state was nevertheless prevented from calling Dr. Koutsky as its own witness. He apparently relies on the statement in the commentary that non-testifying psychiatrists would be protected under OEC 503 by the attorney-client privilege. However, the last sentence of the commentary makes clear that that privilege may be waived.

■ Defendant next claims that the consequence of the testimony he elicited would be that the state could "inquire" regarding Dr. Koutsky's findings but could not call him as a witness. We agree with the state that such an interpretation of the waiver rule is implausible. The waiver of the privilege permitted Dr. Koutsky to be called as a witness, and the court therefore did not err in allowing that.

Reversed and remanded for a new trial.

**VAN HOOMISSEN, J.,** dissenting.

OEC 609-1 provides:

"(1)   The credibility of a witness may be attacked by evidence that the witness engaged in conduct or made statements showing bias or interest. However, before this can be done, the statements must be related to the witness and the conduct described, with the circumstances of times, places and persons present, and the witness shall be asked whether the witness made the statements or engaged in such conduct, and, if so, allowed to explain. If the statements are in writing, they shall be known to the witness.

"(2)   If a witness fully admits the facts claimed to show the bias or interest of the witness, additional evidence of that bias or interest shall not be admitted. If the witness denies or does not fully admit the facts claimed to show bias or interest, the party attacking the credibility of the witness may then offer evidence to prove those facts.

"(3)   Evidence to support or rehabilitate a witness whose credibility has been attacked by evidence of bias or interest shall be limited to evidence showing a lack of bias or interest."

Defendant readily acknowledges that during cross-examination of Cooper he elicited evidence that, in exchange for his testimony, Cooper was allowed to admit responsiblity for the homicide in juvenile court, even though he denied participation in the crime. Such evidence constituted impeachment, because it tended to show that Cooper had an interest in the outcome of this case.

The legislative commentary explains:

"Self-interest commonly takes the form of having a stake in the outcome of litigation. Interest is suggested, for example, if a witness testifies for the prosecution when the witness is an accomplice in the same crime, or is the subject of another indictment. In its extreme form, self-interest is manifest in corrupt activity such as taking a bribe to testify falsely, or writing a letter to intimidate another witness into giving perjured testimony." *State v. Moore,* 180 Or 502, 176 P2d 631 [177 P2d 413] (1947). Kirkpatrick, Oregon Evidence 259 (1982).

When the defendant has brought out facts which, if unexplained, would tend to show that the witness has an interest in the outcome of the case, the state is entitled to rehabilitate the witness by disclosing the entire basis of the agreement.[1] The legislative commentary explains further:

"To evaluate the credibility of a witness fairly, the jury should hear all the facts relating to possible bias and self-interest. *State v. Ellsworth,* 30 Or 145, 47 P 199 (1896); *Clevenger v. Schallhorn,* 205 Or 209, 296 P2d 651 (1955) * * *." Kirkpatrick, Oregon Evidence 260 (1982).

---

[1]*But see State v. Middleton,* 61 Or App 680, 658 P2d 555 *rev allowed* 294 Or 792 (1983) (polygraph examination). Here, the portion of the plea agreement requiring Cooper to take a polygraph examination was *not* offered as evidence.

An additional argument can be made that evidence of the whole agreement was independently admissible once defendant had alluded to a portion thereof. *See* OEC 106.

I would hold that the trial court did not err, nor did it abuse its discretion, in permitting the state to introduce State's Exhibit 200. *Middleton* does not require a reversal here. The state was entitled to offer the evidence, if only to show that it did not bargain for any particular testimony. Accordingly, I dissent.

I agree with the majority's disposition of defendant's other assignments.