Argued and submitted February 8, reversed and remanded May 11, reconsideration denied June 24, petition for review allowed August 2, 1983 (295 Or 466)
See 296 Or 63, 673 P2d 522 (1983)

# STATE OF OREGON,
*Respondent,*

*v.*

# FLOYD EMMIT EBY, JR.,
*Appellant.*

## (81-1035; CA A24088)
663 P2d 778

John Daugirda, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

RICHARDSON, P. J.

Van Hoomissen, J., dissenting.

## RICHARDSON, P. J.

Defendant appeals his conviction for felony murder and first degree robbery.[1] He was accused of shooting and killing a person in the course of a robbery and raised an alibi defense. We reverse and remand for a new trial.

Defendant argues that the trial court erred in allowing the state to "vouch" for the credibility of two witnesses who testified for the state regarding defendant's involvement in the killing. Nancy McVae, one of the witnesses, testified she helped defendant plan the robbery and accompanied him. She described the details of the robbery and shooting. While McVae was on the stand, the prosecutor elicited from her that she was promised immunity and also that in return she promised truthful testimony. Defendant did not object. The other witness, Paul Bigornia, testified that defendant called him, told him he had shot someone and asked him to take the weapon, keep it and file the firing pin. A deputy district attorney had previously testified on direct examination, over defendant's objection, that Bigornia had entered into an agreement by which he was granted immunity from prosecution for the crime of hindering prosecution.

One condition of the agreement was that he testify truthfully and completely at all hearings regarding the homicide. The agreement also contained a promise on the part of Bigornia that he take a polygraph test, but the deputy district attorney did not testify to that condition of the agreement. However, when Bigornia was on the stand, he testified as follows:

"Q.  Anything else that somebody told you or you read about how Ted Schleining died?

"A.  Not really about how Ted Schleining died.

"Q.  Now, you have some reports with you today. What are those?

"A.  Oh. This was my interview with Detective Shaffer and it also contains the polygraph —

---

[1] He was also tried for intentional murder, but the jury could not arrive at a verdict on that count.

"Q. Excuse me, Mr. Bigornia. When you talk about the things that Mr. Shaffer gave you and the interview you gave him, is this a transcript of the statement?

"A. Yes.

"Q. Were they originally tape recordings?

"A. Yes."

Defendant moved for a mistrial on the basis of the mention of the polygraph test in front of the jury. His second assignment of error is that a mistrial should have been granted.

Defendant contends that by permitting testimony regarding the truthfulness condition of McVae and Bigornia's immunity agreements, the court impermissibly allowed the state to vouch for their credibility. Because there was no objection at the time of McVae's testimony, we consider only the evidence regarding Bigornia's agreement. *State v. Coria,* 39 Or App 507, 592 P2d 1057, *rev den* 286 Or 449 (1979).

■    In *State v. Corgain,* 63 Or App 26, 663 P2d 773 (1983), we concluded that under the reasoning in *State v. Middleton,* 61 Or App 680, 658 P2d 555, *rev allowed* 294 Or 792 (1983), it is impermissible to use a plea agreement's condition of truthfulness to rehabilitate a witness who has been impeached by evidence of that plea agreement. The opinion in *Middleton* cited OEC 609-1(3),[2] which limits evidence used to rehabilitate a witness impeached for bias or interest to evidence tending to show lack of bias or interest. The official legislative commentary indicates that evidence of truthfulness is specifically excluded.[3]

This case differs from *Middleton* and *Corgain* in that the impeachment by the plea agreements was done by the

---

[2] OEC 609-1(3) provides:

"Evidence to support or rehabilitate a witness whose credibility has been attacked by evidence of bias or interest shall be limited to evidence showing a lack of bias or interest."

[3]

"Evidence of the truthfulness of the witness cannot be shown regardless of whether evidence of bias or interest is introduced. See ORE 608(1)(b). Under this subsection, evidence that is used to rehabilitate a witness must address itself to the nature of the impeaching evidence, i.e., it must only show lack of bias or interest. * * *" Kirkpatrick, Oregon Evidence 262 (1982).

state.[4] The difference is not critical, because the rule also applies when a party rehabilitates a witness impeached by that party.

■       Bigornia's testimony was obviously important. It corroborated McVae's account in part and included defendant's admission of committing the crime. Defendant stresses that the trial was a credibility contest between the state's accomplice witnesses and defendant and his alibi witnesses. Even discounting McVae's testimony because no objection was made, the improper rehabilitation of Bigornia was significant enough to be prejudicial and require a new trial.

Because we reverse and remand for a new trial, it is unnecessary to discuss defendant's claim of error regarding mention of the polygraph. The problem is unlikely to arise on retrial.

■       In his third assignment of error, defendant contends that certain photographs of the corpse were prejudicial beyond their probative value and should not have been admitted. He argues that the photographs were not necessary, because he stipulated that someone shot and killed the victim with defendant's rifle. The state argues that the photographs were necessary to corroborate the testimony of McVae and Bigornia. Although none of the photographs is pleasant, they are not extremely gruesome. Many other photographs were excluded as cumulative. The photographs were relevant to show such matters as how and where the victim died, the location of the wound on the victim's body and the bullet's trajectory. These facts corroborated McVae's testimony regarding the manner and circumstances of the shooting. Defendant's stipulations did not admit those matters. Whether exhibits have sufficient probative value to warrant admission is within the discretion of the trial court. *State v. Reams,* 47 Or App 907, 916, 616 P2d 498 (1980), *aff'd* 292 Or 1, 636 P2d 913 (1981). The court did not abuse its discretion in admitting the photographs.

Reversed and remanded for a new trial.

---

[4] However, in this case and in *Middleton* the defense referred to the agreement in its opening statement.

**VAN HOOMISSEN, J.,** dissenting.

I agree that defendant waived any objection to the testimony of Nancy McVae when he failed to object to that testimony. *State v. Abel,* 241 Or 465, 467, 406 P2d 902 (1965). I also agree with the majority's disposition of defendant's third assignment.

As to defendant's first and second assignments of error, I would affirm for the reasons stated in my dissenting opinion in *State v. Corgain,* 63 Or App 26, 663 P2d 773 (1983), and Judge Richardson's dissenting opinion in *State v. Middleton,* 61 Or App 680, 658 P2d 555, *rev allowed* 294 Or 792 (1983).