Argued and submitted July 7, reversed August 16,
petition for rehearing denied September 27, 1983

STATE OF OREGON,
*Petitioner on Review,*

*v.*

RAYMOND EDWARD MIDDLETON,
*Respondent on Review.*

(TC C75-06-1924, CA A23510, SC 29430)

668 P2d 371

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause and submitted the brief for petitioner. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Ernest E. Estes, Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

CAMPBELL, J.

## CAMPBELL, J.

The primary question presented in this case is whether defendant's jury conviction of felony murder must be reversed because of the admission into evidence of the fact that one of the state's witnesses passed a polygraph examination. Defendant contends that the admission of this evidence was error and his motion for a mistrial should have been granted. The Court of Appeals agreed and reversed defendant's conviction. *State v. Middleton,* 61 Or App 680, 658 P2d 555 (1983). We also hold that the admission of this fact into evidence was error, but in view of the jury questions and other evidence in this particular case, the error was harmless.

The evidence is uncontroverted that on June 6, 1975,[1] defendant Middleton and his friend Shaw spent the afternoon and evening drinking and attending parties. Late in the night Shaw drove defendant to a convenience store. Defendant went in alone and came out with a cash register. The two then went to another convenience store. Defendant again carried out a cash register, but left behind a store clerk, who was beaten so badly that he died from head injuries a few days later. Later the two men broke open the registers, divided the cash and dumped the registers off a bridge.

A relative of defendant testified at trial that while he and defendant were discussing the convenience store robbery, defendant admitted he was responsible for the robbery. He also said that he had beaten the clerk with a bat. The relative reported this conversation to the police after the clerk died.

The police questioned both Shaw and the defendant. Shaw initially said that he did not see Middleton strike the clerk. He later entered into a plea agreement with the state, on the conditions that he testify at defendant's trial, that he show the police where the cash registers were and that he pass a polygraph examination. He received a 10 year sentence for robbery. At trial during their opening statements both the state and defense counsel referred to the fact that Shaw was testifying because of a plea agreement. Shaw testified that he saw the defendant hit the clerk. During the state's direct

---

[1] Defendant originally pleaded guilty to felony murder in 1975. He successfully petitioned for post-conviction relief.

examination of Shaw, following Shaw's description of the sentence he received as a result of the plea agreement, the following colloquy took place in chambers:

"[State] Mr. Shaw, would you tell the Court, for the record, what the entire deal was.

"THE WITNESS: I had to agree to testify, plus I had to take a polygraph examination and pass, and I also had to show them where the cash registers were.

"[State] That's the question I have.

"[Defense Counsel] I object to any reference to polygraph. That gives an indication that something has more validity and truth than necessarily a polygraph indicates.

"THE COURT: It might be proper on redirect. It's not necessarily proper on your direct.

"[State] Normally, I don't think it would be proper on direct, and I think I could ask the Court Reporter to read back what [Defense Counsel] said in his opening statement, and when he said it, you know, he's the one that first touched upon it in his opening statement.[2] He said that there was a deal made with the State, and the agreement was the witness would get ten years and have to testify, period. I think where he brings it up in his opening statement — I think he has opened the door, and I think I'm entitled, you know — he's the one that made reference to a deal — what the deal was - and that was not what the deal was.

"THE COURT: Do you understand his opening statement to be testimony? It's not.

"[State] Well, all right, then.

"THE COURT: Okay. I really wasn't called upon to make a ruling, because it has never actually been offered. He's coming in here looking for an advisory opinion as to whether he ought to ask the question. He should have just asked the thing and let [Defense Counsel] object, and then I would have sustained it, if it had been asked, and if an objection had been made."

---

[2] The first recorded mention of the plea agreement was actually in the state's opening statement, but there are indications the state also referred to the agreement in voir dire.

"I have also indicated to you that a co-defendant, Mr. Shaw, a person who's equally guilty, will testify on behalf of the State, that Mr. Shaw has made a deal, and you will hear what that deal was; that in 1975 Mr. Shaw agreed to plead guilty to the crime of Robbery in the First Degree and agreed to cooperate with police, agreed to do anything they asked him to do basically; and as a result of that, in 1975, you will hear he received a 10-year sentence."

Defense counsel on cross examination impeached Shaw with several inconsistent statements made before entering into the plea agreement with the state, and mentioned the plea agreement.

On redirect examination, the state asked the following questions:

"Q   Did you tell the District Attorney's Office and the Police Department the truth after you made the deal?

"A   I believe so. I mean I believe it was after.

"Q   What was it about the deal that made you tell the truth?

"A   I don't remember exactly. Probably the fact that they weren't going to charge me for the murder.

"Q   Did they require you to do something before they would make the deal with you — the District Attorney's Office?

"A   Yes, I had to agree —

"[Defense Counsel] I object to that. It's a matter that was taken up previously outside the presence of the jury.

"THE COURT: He can answer.

"Q   [State] Did you have to do something successfully before they would give you the deal?

"A   Yes.

"Q   Would you tell the jury what that was.

"A   I had to agree to testify. I had to show them where the cash registers had been. I had to take a polygraph and pass it."

Defense counsel moved for a mistrial:

"[Defense Counsel] Your Honor, for the record, I also want to again move for a mistrial because I had objected to the item about the lie detector being mentioned. [State] pursued that and brought it back in, and we've got a lie detector test mentioned where the witness testified that he took a lie detector test and he passed it. We don't have the lie detector test or the ability to cross-examine the lie detector test. It's a very considerable statement which I think gives some indication that the mechanical machine has made this truthful when I don't think that fact, as a matter of fact, exists. On that basis, I would make the motion.

"THE COURT: Well, the motion is denied.

"Now, [State] quite properly asked the question outside the presence of the jury. I'm sure the Reporter wrote down my

answer at the time where I waved the red flag right at you, * * *. I said this might properly be a matter for redirect, but it's not properly a matter on his direct examination.

"[Defense Counsel] That's right.

"THE COURT: Now, you took it upon yourself, in cross-examination of this man, to make reference again to some kind of a deal. Now, I don't like — I'm sure every member of the jury does listen — the insinuation that goes along with that term, 'deal.' There was a plea bargain made which is a deal, but when you want to stir this up and refer to the deal and insinuate an impropriety, [State] on his redirect has a right to show what the terms of the arrangement were."

The jury found defendant guilty of felony murder. The Court of Appeals reversed his conviction, relying on OEC 609-1.[3]

The state petitioned for review. It contends that it is essentially unfair for the defense to be allowed to enter part of the plea agreement into evidence, while the state is denied the right to enter the remainder of the agreement. It is true the general rule of evidence is to this effect.[4] This does not decide

---

[3] OEC 609-1:

"Rule 609-1: Impeachment for bias or interest. (1) The credibility of a witness may be attacked by evidence that the witness engaged in conduct or made statements showing bias or interest. However, before this can be done, the statements must be related to the witness and the conduct described, with the circumstances of times, places and persons present, and the witness shall be asked whether the witness made the statements or engaged in such conduct, and, if so, allowed to explain. If the statements are in writing, they shall be shown to the witness.

"(2) If a witness fully admits the facts claimed to show the bias or interest of the witness, additional evidence of that bias or interest shall not be admitted. If the witness denies or does not fully admit the facts claimed to show bias or interest, the party attacking the credibility of the witness may then offer evidence to prove those facts.

"(3) Evidence to support or rehabilitate a witness whose credibility has been attacked by evidence of bias or interest shall be limited to evidence showing a lack of bias or interest."

This trial was held in December of 1981. Because the Oregon Rules of Evidence did not become effective until January 1, 1982, this rule is not controlling. As the commentary points out, however, this rule is essentially a codification of decisional law and was not intended to work a change in the area of impeachment or rehabilitation.

[4] ORS 41.880:

"When part of an act, declaration, conversation or writing is given in evidence by one party, the whole, on the same subject, may be inquired into by the other; when a letter is read, the answer may be given; and when a detached act,

the issue, because this rule is not without its exceptions. In *Myers v. Cessna Aircraft,* 275 Or 501, 553 P2d 355 (1976), this court approved the exclusion from evidence of a portion of an admissible report because that portion contained inadmissible hearsay.

The state also argues that following this impeachment for bias or interest it then had the right on redirect examination to offer the remainder of the plea agreement in an attempt to rehabilitate the witness.

■　　While it is true that an opposing party may offer evidence to rebut an inference of bias or interest on the part of a witness, the fact that this witness was required to pass a polygraph test before he entered into the plea agreement is inadmissible to rebut a charge of interest or bias. The state contends that because the witness was required to pass such a test, he would no longer have an interest. We are not convinced. The interest is shown by the plea agreement itself.

■　　A witness in Shaw's position has decided to trade his testimony for a promise that the state will not attempt to seek a conviction for a crime that the witness may in fact be guilty of. The result of such a test cannot rehabilitate the witness because it does not refute or explain the fact that he did indeed enter into a plea agreement. Shaw arguably could have been found guilty of murder. He decided to plead guilty to robbery, which carried a maximum penalty of 20 years incarceration. The fact that Shaw passed a polygraph is self-serving and impermissibly bolstering. Evidence of this type does not help the jury determine the truth of the matter at hand.

The state asserts that even if the trial court erred in admitting this evidence, the error was harmless under *State v.*

declaration, conversation or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence."

This is similar to OEC 106:

"Rule 106. When part of transaction proved, whole admissible. When part of an act, declaration, conversation or writing is given in evidence by one party, the whole on the same subject, where otherwise admissible, may at that time be inquired into by the other; when a letter is read, the answer may at that time be given; and when a detached act, declaration, conversation or writing is given in evidence, any other act, declaration, conversation or writing which is necessary to make it understood may at that time also be given in evidence."

*Van Hooser,* 266 Or 19, 511 P2d 359 (1973).[5] Defendant counters with the argument that the admission of the result of a polygraph examination is so inherently prejudicial that it cannot be harmless error.

Oregon law is clear that the results of polygraph examinations are not favored in our courtrooms. We said in *State v. Green,* 271 Or 153, 165-166, 531 P2d 245 (1975):

> "Despite the fact that the polygraph, or 'lie detector,' has been in use for many years, most courts still refuse to admit the results of polygraph tests of a defendant in a criminal case as substantive evidence on the issue of his guilt or innocence. The principal reason for rejecting such evidence is that the polygraph has not yet attained general scientific acceptance as a reliable and accurate means of ascertaining truth or deception, as required as a prerequisite to judicial acceptance of new scientific techniques and devices. Thus, the reluctance of the courts to accept lie detector evidence has not been entirely due to judicial inertia." (Footnotes omitted.)

Although polygraph examinations have not been accepted as reliable in the scientific community or by the courts, a lay person may not be aware of this. Because of this, there is a danger that a juror might give evidence of passing a polygraph examination great weight and even view it as a complete answer to the question of the credibility of a witness.

We agree that this type of evidence is inherently prejudicial, but under the specific facts of this case there was little likelihood that this evidentiary error could have affected the verdict, because Shaw's credibility or lack of it was not a determinative factor. *State v. Van Hooser, supra,* 266 Or at 25-26.

Defendant testified at trial and did not deny the act. His defense was diminished responsiblity because of mental disease or defect. He testified that he had few memories of the evening because he was intoxicated.

---

[5] Language in *State v. McLean,* 255 Or 464, 468 P2d 521 (1970) suggests that erroneously admitted evidence is deemed prejudicial in a criminal case unless the contrary is affirmatively shown. OEC 103(1), effective January 1, 1982, now provides:

> "(1) Effect of erroneous ruling. Evidential error is not presumed to be prejudicial. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, * * *."

This trial turned out to be a battle of the experts. Defendant presented one psychiatrist who testified that defendant suffered from "pathological intoxication" and was unable to form the requisite intent to commit the crime. He based his opinion on interviews, two sodium amytal ("truth serum") tests and an alcohol provocation test.

The testimony of the state's expert witnesses, a psychiatrist and a psychologist, cast doubt on the validity and reliability of the tests that were conducted. They testified that based on their tests and observations the defendant was able to form the intent to commit the crime.

Shaw's testimony was mainly about the events of that night. He described several different times that he saw defendant consume alcohol that night, but said he was unable to form an opinion on whether defendant was drunk. Shaw testified that he was drunk himself by the end of the night. His testimony did not contradict defendant's in any significant way. This case was not one in which the jury was called upon to choose whether to believe Shaw or the defendant in order to render its verdict, because on all major points their testimony coincided, and defendant did not deny the physical acts of the crime.

Because we are confident that the error in admitting the evidence of the result of Shaw's polygraph examination was harmless in this case, we are not required to reverse defendant's conviction. Article VII, Section 3, Oregon Constitution. ORS 138.230.

Defendant also claims error in a jury instruction concerning the testimony of expert witnesses, but his exception was inadequate. *State v. Carson,* 292 Or 451, 640 P2d 586 (1982); *Lewis v. Baker,* 243 Or 317, 413 P2d 400 (1966).

We reverse the Court of Appeals and affirm defendant's conviction.