Argued and submitted November 3, affirmed December 20, 1983

# STATE OF OREGON,
*Petitioner on review,*

*v.*

# ARCHIE SNIDER,
*Respondent on review.*

(No. 81-333C, CA A25034, SC 29613)

674 P2d 585

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the petition and brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

David E. Groom, Deputy Public Defender, Salem, argued the cause for respondent on review. With him on the brief was Gary D. Babcock, Public Defender, Salem.

JONES, J.

## JONES, J.

Defendant was convicted of felony murder. His conviction was reversed by the Court of Appeals. We allowed review in this case to decide whether the trial court erred in admitting in evidence a condition in a plea agreement that the state's witness would take and pass a polygraph examination.

In this case, defendant was convicted of conspiring with Kenneth Foster, Lincoln Jackson and Terry Walker of kidnapping and killing the victim, Andrew Norwest. Norwest was picked up by these people in a van. As they drove to a remote area, Lincoln Jackson hit the victim repeatedly with an ax handle. While still in the van, Foster shot the victim in the arm. The group debated and then decided to execute the victim rather than take him to a hospital. Lincoln Jackson marched the victim out of the van up a hill away from the road. After telling the victim he was going to die, Jackson shot Norwest in the head. The defendant, Archie Snider, then took a gun from the van, walked up the hill where the victim was lying, and fired four shots into his face. Whether the victim was already dead at the time these four shots were fired was disputed at trial.

Terry Walker entered into a plea agreement[1] with the state which contained a condition that he "will take a polygraph examination as to the truthfulness of his statement to the police and as to his testimony at trial." If the polygraph results were to demonstrate that he had been truthful, Walker would be allowed to plead to the lesser included offense of

---

[1] The relevant portions of the plea agreement are as follows:

"1. Defendant will give a complete statement regarding everything he knows concerning the kidnapping/death of Andrew Norwest.

"2. Defendant will testify at all trials of all persons charged as a result of this incident.

"3. Defendant will take a polygraph examination as to the truthfulness of his statement to the police and as to his testimony at trial (see agreement attached).

"4. If defendant performs 1, 2 and 3 and is truthful the State will accept a plea to Manslaughter in the First Degree and agree:

"a) to make no recommendations as to length of time but will inform Court as to facts.

"b) State will recommend defendant not be sentenced to an enhanced penalty 161.610."

manslaughter in the first degree. After testifying on direct examination, Walker was cross-examined about his plea agreement with the state by defense counsel as follows:

"Q. Now, you said that you got ahold of your lawyer and you made a deal?

"A. Yes.

"* * * * *

"Q. You're supposed to testify on each one of the trials; isn't that right?

"A. Right.

"Q. Okay. And then in return they were going to let you plead guilty to one count of manslaughter?

"A. Yes.

"Q. And they were not going to make any recommendation what the sentence should be?

"A. I'm not sure how they worked it out."

On redirect examination, the prosecutor introduced the four-page plea agreement. Defense counsel made appropriate legal objection to the admission of the document. The trial judge overruled the objection and the written plea agreement was admitted in evidence. We hold that the ruling was erroneous and prejudicial.

This case is similar to two cases decided by this court. In *State v. Middleton,* 295 Or 485, 668 P2d 371 (1983), we held it to be error for a trial court to allow the state to introduce evidence that a state's witness had entered into a plea agreement containing certain conditions. The conditions were that the witness would take and pass a polygraph concerning his knowledge about a crime. In *Middleton,* the state offered evidence that the witness had in fact passed the polygraph examination prior to trial. We said this was improper bolstering of the witness's credibility.

In *State v. Green,* 271 Or 153, 531 P2d 245 (1975), this court said evidence of the results of polygraph tests are not admissible. In addition, we said evidence of the fact that a person had taken a polygraph test was inadmissible.

As mentioned, in the case at bar, the plea agreement contained a condition that the witness "will take a polygraph examination as to the truthfulness of his statement to the

police and as to his testimony at trial." The agreement differs from *Middleton* and *Green* in that the agreement speaks prospectively. It provided that if the defendant takes the polygraph as to the truthfulness of his testimony at trial and the polygraph results demonstrate he was truthful, the state would accept a plea to the lesser charge of manslaughter in the first degree. In this case, the jury heard evidence that the witness would in the future be subject to polygraph testing as opposed to having already taken the test.

Evidence of a plea agreement containing a provision that the state's witness must take and pass a polygraph examination to verify trial testimony constitutes improper bolstering of the witness's credibility. The vice of such evidence is that a jury might give special credence to the testimony of the state's witness because of the binding force of the plea bargain, implying a guarantee of the witness's veracity. The jury might well infer that the contract contained a mechanism, to wit, the polygraph examination, to keep the witness honest.

As stated by Judge Poole in the recent opinion of *United States v. Brown,* 720 F2d 1059, 1072 (9th Cir 1983), "the commitment-to-the-truth stood not alone, but in the guardian presence of detection by polygraph." With such a plea agreement condition in evidence, a prosecutor could argue or a jury could infer, even without argument, that the witness had every pressure to tell the truth because if he failed the polygraph examination, he would lose his "deal" for a reduced charge. A jury could conclude that since he was willing to testify and was still willing to be tested by the polygraph, he must be telling the truth. This is impermissible bolstering of the credibility of the witness. It was improper for the trial court to allow the jury to hear, read and infer that the exposure of any falsity by means of such an instrument assured the accuracy of the state's key witness.

In *United States v. Bursten,* 560 F2d 779 (7th Cir 1977), a key witness in a criminal fraud case, Lesniak, had entered a plea bargain calling for his readiness to submit to polygraph checking of his promise to make full disclosure about the matters to which he was to testify. Over objection, the court allowed the entire document to go to the jurors. Lesniak had not in fact taken the test. On appeal, the

government argued that the entire document was receivable to counter the defense argument that Lesniak had lied about the defendant to save his own skin. The government rationalized that the polygraph evidence, while not admissible to prove truth or falsity, was probative for purposes of demonstrating that Lesniak was bound to truthfulness "by the knowledge that he was subject to a lie detector test at any time." *Id.* at 785.

The *Bursten* court pointed out that the polygraph monitoring provision in a plea bargain agreement is not simply an administrative tool for evaluating pre-trial facts and coming to a prosecutorial decision:

"* * * Despite the Government's attempt to nicely distinguish trial from pre-trial credibility of a witness' statements, the sole purpose for pursuing admission of the disputed sentence could only have been to strengthen Lesniak's story in the jury's estimation. If the Government was permitted to show that Lesniak had been intimidated into truthfulness prior to trial by the ever-present possibility of a polygraph examination, then the inescapable inference is that his same story at trial is also true. Counsel for the government stated during oral argument that the inclusion of similar paragraphs regarding potential polygraph examination in plea agreements is a routine practice. Given the awesome powers which the prosecution may wield in order to insure veracity of its witnesses' statements, we strongly condemn this superfluous practice. Prosecutors who introduce such evidence in the future to obtain convictions should expect reversal." *Id.* at 785.

In this case, the testimony of Terry Walker provided critical evidence about the alleged conspiracy to kidnap and kill the victim. The error in allowing improper bolstering of this witness's credibility was prejudicial.

The Court of Appeals is affirmed.