Argued and submitted December 12, 1983, affirmed January 18, reconsideration denied March 16, petition for review denied April 24, 1984 (297 Or 82)

# TRAVIS,
*Respondent,*

*v.*

# UNRUH,
*Appellant.*

(L81-0222; CA A26953)

674 P2d 1192

W. V. Deatherage, Medford, argued the cause for appellant. On the brief were Mark S. Wolfe, and Frohnmayer, Deatherage, deSchweinitz & Pratt, Medford.

J. Michael Alexander, Salem, argued the cause for respondent. With him on the brief was Burt, Swanson, Lathen, Alexander & McCann, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

This is a medical malpractice case. A jury found defendant negligent and awarded plaintiff $450,000 in damages. Defendant appeals. We affirm.

Plaintiff was injured when his shotgun discharged accidentally, propelling birdshot into his eyes. He received emergency and follow-up medical treatment from defendant, an opthalmologist. The treatment failed to restore his vision. Defendant makes eleven assignments of error, only one of which has merit.[1] For the reasons discussed below, we affirm the trial court.

Defendant alleges that the trial court erred in allowing Dr. Calhoun, a medical expert, to testify from an article in a recognized medical journal that, according to a medical study, persons with eye injuries similar to that sustained by plaintiff have a 63 percent chance of regaining functional vision.[2]

---

[1] Defendant's other assignments of error present issues that either are not properly before us or constitute invited error.

[2] Dr. Calhoun testified as follows:

"BY [PLAINTIFF'S COUNSEL]:

"Q Tell us the publication, the volume, page and so forth?

"A It's the American Journal of Ophthalmology, Volume 93, No. 3, page 271.

"Q And is that, among ophthalmologists, a recognized authority in your field?

"A It's a recognized journal.

"* * * * *

"THE WITNESS: There is a description of a group of patients, and it lists the type of injuries within that group and tells percentages of those patients who recovered, who had functional vision.

"* * * * *

"BY [PLAINTIFF'S COUNSEL]:

"Q Now, read the description of the injuries that you think we are dealing with here in Mr. Travis' case?

"A It says group c consisted of 16 patients with through-and-through perforating injuries, 9 injuries of the latter group with the result of foreign bodies that had entered and left the globe and remained in the orbit. This included four shotgun pellets, one BB, three fragments of metal and one piece of shell casing.

"Q And in that group, in that category, what percentage, with adequate treatment, what percentage recovered?

"A We are talking about a functional success rate of 63 percent."

■       An expert may give an opinion about an issue in a case if the testimony "will assist the trier of fact to understand the evidence or a fact in issue." OEC 702. The opinion may be based on facts or data that would be inadmissible in evidence, provided that they are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." OEC 703. Learned treatises are not admissible as substantive evidence, but they may be used for the purpose of impeaching a witness. *See Scott v. Astoria Railroad Co.,* 43 Or 26, 39, 72 P 594 (1903); Kirkpatrick, *Reforming Evidence Law in Oregon,* 59 Or L Rev 43, 111 (1980).

■       The official legislative commentary to OEC 803, hearsay exceptions, provides, in relevant part:

> "The Legislative Assembly did not adopt the federal hearsay exception for learned treatises which appears as subsection (18) of Fed R Evid 803. It wishes to retain the Oregon practice of using treatises in the cross-examination of expert witnesses. Learned treatises should not be admitted as substantive evidence as they are likely to be misunderstood and misapplied in the absence of expert assistance and supervision." *Oregon Evidence Code,* Official Commentary to Rule 803 (Butterworth's 1981).

The treatise in issue was improperly admitted as substantive evidence. The question is whether its admission prejudiced a substantial right of defendant.

OEC 103(1) provides in relevant part:

> "* * * Evidential error is not presumed to be prejudicial. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected * * *."

Dr. Calhoun's brief testimony was merely cumulative of other testimony concerning the statistical probability of plaintiff regaining functional vision after his accident.

Several medical experts testified. Dr. Chenowith testified that plaintiff would have had a 50 percent chance of retaining functional vision had he received proper medical care. Dr. Burpee testified that plaintiff would have had a 75 percent chance of retaining useful vision. Dr. Klein agreed that prompt action would have increased plaintiff's chances of

recovery. That evidence was followed by Dr. Calhoun's, who stated on direct examination that plaintiff had a 50 percent chance of retaining useful vision. He was then cross-examined by defendant. On redirect examination, he testified to the statistical probability of recovery based on the medical journal article. At that point the jury had heard from four experts that plaintiff had had a good chance of retaining useful vision with proper treatment. We find no prejudice in the erroneous admission of the evidence. *See State v. Middleton,* 295 Or 485, 492 n 5, 668 P2d 371 (1983); *Angus v. Joseph,* 60 Or App 546, 550 n 6, 655 P2d 208 (1982), *rev den* 294 Or 569 (1983).

Affirmed.