Argued and submitted December 7, 1990, reversed and remanded for new trial
July 31, 1991

### STATE OF OREGON,
*Respondent,*

*v.*

### JORGE OLIVO ALCARAZ,
*Appellant.*

(CR 89-124; CA A64758 (Control))

### STATE OF OREGON,
*Respondent,*

*v.*

### JORGE OLIVO ALCARAZ,
*Appellant.*

(CR 89-125, 890106M; CA A65017)
(Cases Consolidated)

815 P2d 226

H. V. Garrabrant, Hood River, argued the cause and filed the brief for appellant.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Deits, Judge.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant appeals his convictions for possession of a controlled substance, ORS 475.992(4), delivery of a controlled substance, ORS 475.992(1), and frequenting a place where controlled substances are used. ORS 167.222. The charges were consolidated for trial and on appeal. We reverse.

Defendant was arrested as a result of an undercover police drug investigation that, in part, involved drug sales at Shelly Preston's residence. In addressing defendant's claims of error it is not necessary to recite the evidence in much detail. Preston agreed to sell cocaine to two men for $150, and she went to defendant's residence to arrange the sale. A short time later, defendant came to Preston's house and picked up the money that she had, in the meantime, received from the buyers and then left. Later that same day, defendant returned to Preston's residence. Preston testified that she and defendant went into a room alone and that he gave her cocaine. She sold a portion of the drug to an undercover officer, who was also in the residence.

The case was initially set for trial on November 27, 1989. Preston stated under oath in a proceeding before trial on that date that she got the cocaine from Mendoza, not defendant. At that time, Preston was on probation and was involved in a drug rehabilitation program. The case was rescheduled for trial.

At trial, Preston testified that defendant had sold her the cocaine. Defendant impeached her with the statement that she had made at the November 27 proceeding. The prosecutor then questioned her on redirect examination:

"Q. After you made your [November 27] statement, you said you were contacted by your probation officer, Mr. Bondurant. What did he say to you?

"A. He told me that I could say whatever I wanted to say, to tell, to lie or tell the truth. But, if he found out that I was lying, then my dirty [urinalysis] would be pursued and I'd probably go to prison.

"Q. Did he ask you to take a polygraph?

"A. Yes, he did.

"MR. SHARP: Objection, Your Honor.

"THE COURT:  Do you.... Overruled.

"And, your answer is?

"A.  Yes, he did.

"Q.  Did you take one?

"A.  Yes, I did."

In camera, defendant moved for a mistrial and detailed his objections to evidence regarding the polygraph examination.[1]

■      Defendant makes three assignments of error, all relating to Preston's testimony about the polygraph. We address only the first and second which assert that the evidence about the polygraph was not admissible, because it improperly bolstered the witness' testimony. He argues that, from Preston's testimony, the jury could infer that she had taken and passed a polygraph examination and so her story about defendant's involvement in the drug transaction was probably true, because it had been authenticated by the polygraph. Defendant claims that the court erred in allowing the evidence over his objection and in denying his motion for mistrial. The state agrees that the evidence was not admissible but argues that, in the light of the curative instruction given by the court, the error was harmless.

Essentially, the court told the jury that, although it could consider the fact that Preston was asked to take a polygraph, it could not consider that she agreed to take the examination.[2] However, the vice of evidence about a polygraph examination is not cured by that instruction. In *State v. Snider*, 296 Or 168, 674 P2d 585 (1983), the court held that

---

[1] The court subsequently struck the prosecutor's question, "Did you take one?" and the witness' response.

[2] The court instructed the jury:

"The state of the record should be, for your consideration, that there was a question asked by Mr. Sharp, or, there was a question asked by the District Attorney's office, excuse me, of the Witness whether the probation officer, Jim Bondurant, had asked her to take a polygraph; and she acknowledged that she had been asked that by the probation officer.

"There was another question asked by the District Attorney's office and response given. You are to disregard any further responses by the Witness regarding any further discussion after I made my ruling on the polygraph other than her answer that, yes, she was asked by Mr. Bondurant if she would take a polygraph. Any further responses or questions heard by you should be disregarded and not considered in any fashion or any form in your deliberations in this case."

evidence of a plea agreement between the state and its witness, a codefendant, that required the witness to take and pass a polygraph test to verify that his testimony was truthful, was not admissible, because "[t]he jury might well infer that the contract contained a mechanism, to wit, the polygraph examination to keep the witness honest." 296 Or at 172. The essence of Preston's testimony was that, if she testified truthfully, she would be given favorable consideration in a probation violation hearing and a future polygraph test would determine if she had been truthful. There is no material distinction between the vice of the evidence in *Snider* and this case. The curative instruction offered no cure.

■    The state also appears to argue that there was substantial evidence of defendant's involvement in the drug transaction, and so admission of evidence about a polygraph was harmless. Preston testified that she and defendant were alone when she gave him the money and later when he gave her the cocaine. Consequently, her testimony is the only direct evidence of defendant's involvement in the actual delivery. Defendant offered considerable evidence that cast doubt on her credibility. Under the circumstances of this case, we cannot say that the error was harmless.

Reversed and remanded for a new trial.